Cecil Ray **BLAN**, Mary Blan, Michael Blan, Richard Blan, and Lori Bender, Appellants,

v.

Abdul **ALI**, M.D., and Dennis Lee Bartasis, D.O., Appellees.

No. 14–98–00581–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 18, 1999.

Howard L. Glass, Houston, for appellants.

Joseph R. Alexander, Jr., Richard F. Callaway, Jr., Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices EDELMAN and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is an appeal of a medical malpractice case granting summary judgment in favor of the appellees, Abdul Ali, M.D., and Dennis Lee Bartasis, D.O. In two points of error, the appellants, Cecil Ray Blan, Mary Blan, Michael Blan, Richard Blan, and Lori Bender (collectively, the "Blans") contend the trial court erred in (1) striking their expert's affidavit and (2) granting summary judgment based on their inability to establish the breach of the standard of care and proximate cause elements of their negligence claim. We affirm.

### FACTUAL BACKGROUND

In the early morning hours of July 18, 1994, Cecil Blan's family found him slumped over in the shower of his home and rushed him to the emergency room of Memorial City Hospital. Blan, who was fifty-four years old at the time, had a history of systematic lupus erthematosus and a past cerebral vascular accident ("CVA"), commonly known as a stroke. Blan's wife immediately telephoned Dr. Ali, a cardiologist whom Blan had seen only a few days before during a routine office visit, and told him of the morning's events. Dr. Ali did not come to the hospital at that time but consulted by telephone with Dr. Bartasis, the hospital's emergency room physician. Dr. Ali instructed Dr. Bartasis to call a neurologist. After administering a series of tests, the hospital staff admitted Blan to the hospital under the care of Dr. Ali. That afternoon Blan suffered another stroke.

The Blans filed suit against both Dr. Ali and Dr. Bartasis. The Blans alleged that

Dr. Ali (cardiologist) was negligent in (1) failing to properly investigate and monitor Blan's medical history and condition on initial evaluation; (2) failing to come to the hospital to personally examine Blan; (3) delaying the initiation of appropriate treatment, including steroids and/or anticoagulation therapy; (4) failing to obtain prompt examination of Blan by a neurologist; and (5) delaying Blan's admission to the hospital's Intensive Care Unit ("ICU"). They allege that Dr. Bartasis (emergency room physician) was negligent in (1) delaying treatment, including medications; (2) negligently monitoring Blan's condition; and (3) delaying Blan's admission to the hospital.

To support their medical malpractice claim, the Blans relied on David A. Reisbord, M.D., a neurologist in private practice. Dr. Reisbord has been a medical doctor for more than thirty-five years and board-certified in neurology by the American Academy of Psychiatry and Neurology for more than twenty years. He has served as Chief of the Neurology sections of at least three hospitals over the course of his career. Testifying by affidavit, Dr. Reisbord set forth in detail his medical credentials and professional experience and stated that he had personal knowledge of the appropriate standard of care for the diagnosis, treatment, and care of a patient suffering from a stroke by which the acts or omissions of practicing physicians, such as Dr. Ali and Dr. Bartasis, are measured. According to Dr. Reisbord, the standard of care he describes in his affidavit applies to *"any physician,* regardless of his/her area of expertise, that undertakes to treat and care for a patient *suffering from a stroke* along with the neurological complications of lupus cerebrids."[1] In his affidavit, Dr. Reisbord states that his opinions are based on his experience, expertise, and training as well as his knowledge of the care and treatment of Blan.

In his oral deposition taken as part of pretrial discovery in the case, Dr. Reisbord

1. Emphasis added.

(neurologist) acknowledged that he has no knowledge of the standard of care for either emergency medicine physicians or cardiologists. Relying on these general admissions, Dr. Ali (cardiologist) and Dr. Bartasis (emergency room physician) successfully moved the trial court to strike Dr. Reisbord as an expert on the grounds that he failed to meet the statutory requirements under section 14.01(a) of the Medical Liability Insurance and Improvement Act. In granting the doctors' motions to strike Dr. Reisbord's expert testimony, the trial court signed two orders. In the first order, entered in connection with the granting of Dr. Ali's motion, the court struck Dr. Reisbord's testimony "as to the standard of care for a cardiologist." In the second order, entered in connection with the court's granting of Dr. Bartasis' motion, the court disqualified Dr. Reisbord "from testifying as an expert in emergency medicine at the time of trial" and "from giving expert testimony regarding the standard of care and appropriateness of treatment of [Blan] as to [Bartasis]." Shortly after entering these orders, the trial court found that the Blans, who were left without vital expert testimony as to the applicable standard of care, had no proof of the doctors' negligence. The trial court signed two separate orders granting summary judgment for Dr. Ali and Dr. Bartasis.

### STRIKING OF THE BLANS' EXPERT AFFIDAVIT

■ In their first issue presented for review, the Blans challenge the trial court's striking of Dr. Reisbord as an expert on the standard of care. The Blans argue that the trial court erred in precluding Dr. Reisbord, a board certified neurologist, from testifying to the doctors' treatment of Blan's stroke, an inherently neurological condition. We review the trial court's decision to strike an expert's affidavit for an abuse of discretion. See Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex.1998). We will find an abuse of discretion only if the trial court acted without reference to any guiding rules and principles. See Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex.1997).

### Requirements for Prima Facie Case of Medical Malpractice

■ At the outset, we note that in order to prevail on a medical malpractice claim, the Blans, as plaintiffs, must establish the following elements of a *prima facie* case: (1) a duty requiring the defendants (Dr. Ali and Dr. Bartasis) to conform to a certain standard of conduct; (2) the applicable standard of care and its breach; (3) resulting injury; and (4) a reasonably close causal connection between the alleged breach of the standard of care and the alleged injury. See Martin v. Durden, 965 S.W.2d 562, 564 (Tex.App.—Houston [14th Dist.] 1997, pet. denied). In the court below, the appellees/doctors, in separately filed motions, each sought to negate the elements of breach of standard of care and proximate cause.

### Requirements for Expert Testimony

■ Expert testimony is necessary in a medical malpractice case to meet the plaintiff's burden as well as to establish or preclude summary judgment. See LeNotre v. Cohen, 979 S.W.2d 723, 727–28 (Tex. App.—Houston [14th Dist.] 1998, no pet.); Durden, 965 S.W.2d at 564. In determining the qualifications of experts in a medical malpractice case, we look to Texas Rule of Evidence 702 and the Medical Liability and Insurance Improvement Act (the "Medical Liability Act") as well as interpretive case law. Together, these sources provide the guiding rules and principles against which we evaluate the trial court's decision to strike the Blans' medical expert.

Rule 702 allows a witness "qualified as an expert by knowledge, skill, experience, training, or education" to offer his opinion if it will assist the trier of fact. TEX.R. EVID. 702. Section 14.01(a) of the Medical Liability Act, which specifies the qualifications for a witness in a medical malpractice case, states:

(a) a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care *only* if the person is a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for *the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim;* and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 14.01(a) (Vernon's Pamph.1999) (emphasis added).

The threshold issue in a medical malpractice case is the standard of care. *See Durden,* 965 S.W.2d at 565. A non-physician witness cannot testify as to a physician's standard of care. *See Ponder v. Texarkana Mem'l Hosp.,* 840 S.W.2d 476, 478 (Tex.App.—Houston [14th Dist.] 1991, writ denied). The physician serving as the expert witness, however, need *not* be a specialist in the particular branch of the profession for which the testimony is offered. *See Hernandez v. Altenberg,* 904 S.W.2d 734, 738 (Tex.App.—San Antonio 1995, writ denied); *Simpson v. Glenn,* 537 S.W.2d 114, 116 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). For example, an orthopedic surgeon can testify as to the standard of care for a radiologist because the two professions work closely together, and their specialties are intertwined. *See Silvas v. Ghiatas,* 954 S.W.2d 50, 54 (Tex. App.—San Antonio 1997, writ denied). Likewise, a general surgeon is qualified to testify regarding the standard of care for post-operative procedures performed by a gynecologist because post-operative procedures are common to both fields. *See*

*Simpson,* 537 S.W.2d at 116–18. On the other hand, a pediatrician who admits that he knows little about gynecological matters may not testify in a medical malpractice case against an obstetrician/gynecologist as to matters involving post-surgical pain in a patient's pubic area. *See Roberson v. Factor,* 583 S.W.2d 818, 821 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.). Because the determination of an expert's qualifications under both Rule 702 and section 14.01(a) is based on knowledge, training, or experience, it is incumbent upon the plaintiff in a medical malpractice case to present expert testimony of a medical doctor with knowledge of the specific issue which would qualify him or her to give an opinion on that subject. *See Broders v. Heise,* 924 S.W.2d 148, 152 (Tex.1996) (upholding the exclusion of testimony from a doctor not qualified by knowledge or experience to give an expert opinion on the specific practices alleged to be negligent).

While this court has required the medical expert to be of "the same school of practice" as the defendant-physician,[2] we also have held that a medical witness who is not of the same school of practice may be qualified to testify if he or she has practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those that confronted the defendant charged with malpractice. *See Marling v. Maillard,* 826 S.W.2d 735, 740 (Tex.App.—Houston [14th Dist.] 1992, no writ) (citing *Bilderback v. Priestley,* 709 S.W.2d 736, 740 (Tex.App.— San Antonio 1986, writ ref'd n.r.e.). The Texas Supreme Court has made it clear that if a subject of inquiry is substantially developed in more than one field, a qualified expert in *any* of those fields may testify. *See Broders,* 924 S.W.2d at 152. Likewise, this court has held that if the subject matter is common to and equally recognized and developed in all fields of practice, any physician familiar with the subject may testify as to the standard of

---

2. *See Bradley v. Rogers,* 879 S.W.2d 947, 953 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *see also Hersh v. Hendley,* 626

S.W.2d 151, 154 (Tex.App.—Fort Worth 1981, no writ).

care. *See Garza v. Keillor*, 623 S.W.2d 669, 671 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (infection process); *Hersh*, 626 S.W.2d at 154 (taking a medical history, discharging a patient); *Sears v. Cooper*, 574 S.W.2d 612, 615 (Tex. Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.) (use of a diuretic).

The test to determine if a particular expert is qualified is rooted in the expert's training, experience and knowledge of the standards applicable to the "illness, injury, or condition *involved in the claim.*" *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 14.01(a) (emphasis added). Here, the condition involved in the Blans' claim is a CVA or stroke. In his affidavit, Dr. Reisbord specifically lists his experience and training as a board certified neurologist and enunciates the standard of care for a patient suffering a stroke in accordance with the requirements of section 14.01(a) and Rule 702. *See Marling*, 826 S.W.2d at 739. As a board certified neurologist, Dr. Reisbord is qualified by training and experience to offer expert testimony regarding the diagnosis, care, and treatment of a neurological condition, such as a stroke. The appellees/doctors neither challenge Dr. Reisbord's qualifications as a neurologist nor contend that he does not know how to treat strokes; rather, they argue that he does not know the standard of care as applied to emergency medicine physicians and cardiologists. Dr. Ali (cardiologist) and Dr. Bartasis (emergency room physician) argue that because Dr. Reisbord (neurologist) admitted in his deposition that he is not familiar with the standard of care of either a *cardiologist* or an *emergency room physician*, he cannot

possibly be qualified to give expert testimony as to whether they violated the standard of care in the treatment of Blan's stroke. We disagree. The doctors' argument ignores the plain language of the statute, which focuses *not* on the defendant doctor's area of expertise, *but on the condition involved in the claim. See* TEX. REV.CIV. STAT. ANN. art. 4590i, § 14.01(a).

Despite the fact that we live in a world of niche medical practices and multilayer specializations, there are certain standards of medical care that apply to multiple schools of practice and any medical doctor. To categorically disqualify a physician from testifying as to the standard of care solely because he is from a different school of practice than the doctors charged with malpractice ignores the criteria set out in section 14.01(a) of the Medical Liability Act and Rule 702. The appellees/doctors' argument that Dr. Reisbord is unqualified to give an opinion because he does not know the standard of care applicable to cardiologists and emergency room physicians would be persuasive, if not determinative, *if* Dr. Reisbord were purporting to offer expert medical opinions in matters peculiar to the fields of cardiology or emergency medicine. *He is not.* Dr. Reisbord seeks to offer expert testimony about matters clearly within his knowledge. His affidavit states that the standard of care he describes applies to *any* physician treating a patient suffering from a stroke and lupus, regardless of the physician's area of expertise.[3] Dr. Reisbord is not precluded from giving an opinion that two doctors breached the standard of care in an area in which he has knowledge, skill,

**3.** Drs. Ali and Bartasis contend that the trial court could not consider Dr. Reisbord's supplemental affidavit, in which he states that the standard of care applies to any physician treating a stroke victim. While we agree that *Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108, 111 (Tex.App.—Houston [1st Dist.] 1997, no pet.), precludes the trial court from considering an affidavit that contradicts deposition testimony without an explanation for the change in testimony, the supplemental affidavit does *not* contradict Dr. Reisbord's

deposition testimony. To the contrary, the supplemental affidavit states that the standard enunciated in Dr. Reisbord's original affidavit was applicable to *all* physicians, including Dr. Reisbord. Although Dr. Reisbord stated at his deposition that he was not familiar with the standard of care specifically applicable to emergency medical physicians and cardiologists, it is not necessary that he be able to enunciate a standard of care applicable to a specialty other than his own.

training and experience, and where the subject of the claim (strokes) falls squarely within his medical expertise, merely because he acknowledged that he "could not give an opinion as to a cardiologist breaching the standard of care in *cardiology* "[4] or that he does not know the standard of care for physicians practicing emergency medicine. Given his testimony that the standard he describes applies to any physician who undertakes to treat and care for a patient suffering from stroke, Dr. Reisbord is qualified to testify as to the appellees/doctors' treatment of Blan's stroke.

■ Because the record demonstrates that Dr. Reisbord has the requisite knowledge regarding the subject of inquiry (strokes) and is qualified based on his training or experience to offer his opinions on that subject, we find the trial court abused its discretion in excluding Dr. Reisbord's proof against Dr. Ali as to the standard of care for a cardiologist to the extent that standard encompasses matters common to all physicians. Likewise, it was an abuse of discretion for the trial court to exclude Dr. Reisbord's proof against Dr. Bartasis as to the standard of care developed in neurology and common to all physicians. Having found that Dr. Reisbord was qualified to testify as to the standard of care at issue in this case, we find that the Blans raised genuine issues of material fact as to the standard of care and that the trial court erred in granting summary judgment based on the Blans' inability to establish that element of a *prima facie* case.

### GRANTING OF SUMMARY JUDGMENT FOR THE APPELLEES/DOCTORS

In their second issue for review, the Blans contend the trial court erred in granting summary judgment in favor of the doctors on the element of proximate cause. In seeking to demonstrate proof of proximate cause, the Blans offered Dr. Reisbord's affidavit, in which he stated that the negligence of the appellees/doctors proximately caused Blan's injuries.

In addition, the Blans point out that Mary Blan (Blan's wife) presented a fact issue regarding the appellees/doctors' claims that Blan contributed to his stroke by failing to take medication that would have prevented it.

### Standards of Review on Appeal

Dr. Ali filed a traditional motion for summary judgment. *See* TEX.R. CIV. P. 166a. A summary judgment is appropriate when the movant establishes there is no genuine issue of material fact as to one or more essential elements of each of the non-movant's claims. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). In reviewing a summary judgment, we accept as true all proof favorable to the non-movants (the Blans) and indulge in every reasonable inference in their favor. *See id.*

Dr. Bartasis filed a "no evidence" motion for summary judgment. *See* TEX.R. CIV. P. 166a(i). In considering a "no evidence" summary judgment, we review the proof in the light most favorable to the non-movants and disregard all contrary proof and inferences. *See Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 432 (Tex.App.—Houston [14[th] Dist.] 1999, no pet.). We sustain a "no evidence" summary judgment if: (a) there is a complete absence of proof of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only proof offered to prove a vital fact; (c) the proof offered to prove a vital fact is no more than a mere scintilla; or (d) the proof conclusively establishes the opposite of the vital fact. *See id.* If the non-movants' proof rises to a level that would enable reasonable and fair minded people to differ in their conclusions, then they have presented more than a scintilla. *See id.* at 432–33. If, on the other hand, the proof is so weak as to do no more than create mere surmise or suspicion of a fact, then it is less than a scintilla. *See id.* at 432. Where, as here, the trial court granted the motions for summary judgment

---

4. Emphasis added.

without stating the grounds on which it relied, we must affirm the summary judgment if *any* ground argued in the motions was sufficient. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

### The Appellees/Doctors as the Proximate Cause of Injury

In addition to moving for summary judgment on the issue of standard of care, the appellees/doctors also argued an absence of proof of proximate cause. Dr. Ali asserted that, by providing his own affidavit testimony as to the standard of care at issue in this case and affirmatively stating that he had not breached it, he effectively negated proximate cause. In support of his contention that there was no proof of proximate cause, Dr. Bartasis argued his expert, Dr. Arlo Weltge, established with his affidavit that Dr. Bartasis did not cause Blan's injuries.

The Blans relied in part on Dr. Reisbord's affidavit to respond to the proximate cause challenges; therefore, we must decide whether his affidavit was sufficient to raise a fact issue on this element. With regard to causation, Dr. Reisbord's affidavit states:

> By their negligent acts and omissions, Drs. Ali and Bartasis allowed Mr. Blan's condition to deteriorate. Prompt recognition and treatment of Mr. Blan's condition would have led to appropriate treatment of his condition, and more likely than not have led to an improved outcome for Mr. Blan.
>
> * * * *
>
> It is further my opinion that Drs. Ali and Bartasis' negligence was a proximate cause of Mr. Blan's injuries.

**5.** In a medical negligence action, proximate cause is an element that ordinarily must be proven by expert testimony. *See Lopez v. Carrillo,* 940 S.W.2d 232, 236 (Tex.App.—San Antonio 1997, pet. denied). Although Mary Blan is not an expert, we may consider the purely factual information she provided to refute the notion that Cecil Blan stopped taking his medication on his own. There is no reason to require an expert's testimony to state these facts.

Conclusory statements by an expert are not sufficient to support *or defeat* summary judgment. *See Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex. 1997). Rather, the expert must explain the basis of his statement to link his conclusions to the facts. *See Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex.1999) (holding that the medical expert's affidavit was insufficient for failing to explain *why* implantation of additional devices was medically warranted in light of the patient's history).

In this case, Dr. Reisbord's affidavit does not: (1) identify what aspect of Blan's condition deteriorated as a result of the alleged negligent acts; (2) explain how or why the alleged negligent acts caused Blan's condition to deteriorate in that manner; (3) identify what better outcome could have been produced by different actions; or (4) explain how or why a different treatment could have produced such an improved outcome. Therefore, the affidavit is conclusory and insufficient to create a fact issue on the element of causation.

The Blans also assert that Mary Blan's affidavit raised a triable issue of fact concerning proximate cause. In their motions for summary judgment, both doctors offered proof that Blan caused his own injuries by taking himself off medications. In response, the Blans offered the affidavit of Mary Blan,[5] which stated that Blan had tapered off his medication under the advice of his physician.[6] A plaintiff claiming medical negligence against a defendant doctor must prove the doctor's negligence, if any, caused his injuries. *See Martin v. Durden,* 965 S.W.2d 562, 564 (Tex.App.—Houston [14th Dist.]

**6.** Although the appellees/doctors argue on appeal that the affidavit of Mary Blan contained hearsay statements, they failed to obtain a ruling on these objections in the court below and, therefore, they are part of the record before us on appeal. *See* TEX.R.APP. P. 33.1(a); *Wal–Mart Stores, Inc. v. McKenzie,* 997 S.W.2d 278, 280 (Tex.1999).

1997, pet. denied). Even assuming Mary Blan's affidavit conclusively established that Blan did not cause his own injuries, it is no proof that alleged negligence of Drs. Ali and Bartasis was the proximate cause of Blan's injuries. Blan's fault is therefore irrelevant. *See Barefield v. City of Houston*, 846 S.W.2d 399, 404 (Tex.App.—Houston [14 th Dist.] 1992, writ denied) (noting that the plaintiff's negligence is irrelevant when the defendants conclusively negated the duty element).

Because the Blans offered no evidence of the element of proximate cause in response to Dr. Ali's traditional summary judgment motion and Dr. Bartasis's "no evidence" summary judgment motion, Drs. Ali and Bartasis were entitled to judgment as a matter of law on the issue of proximate cause. We overrule the Blans' second appellate issue and affirm the judgment of the trial court.