In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-634 CV


____________________



CHCA MAINLAND, L.P. d/b/a MAINLAND MEDICAL CENTER, Appellant



V.



CATHY R. WHEELER and TOMMY WHEELER, Appellees






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-179,083






MEMORANDUM OPINION


 In this health care liability claim, CHCA Mainland, L.P. d/b/a Mainland Medical
Center ("Mainland") appeals an order denying its motion to dismiss a claim brought by
appellees Cathy R. Wheeler and Tommy Wheeler. Mainland contends the trial court abused
its discretion in denying the motion because the expert reports the Wheelers served on
Mainland did not comply with the statutory requirements of section 74.351 of the Texas Civil
Practice and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon
Supp. 2007). We affirm.

Background


 According to the Wheelers' petition, a doctor evaluated Cathy in his office on
February 14, 2005, based on her complaints of abdominal pain. He referred her to
Renaissance Hospital the same day for an abdominal ultrasound. A radiologist at
Renaissance read the ultrasound films and reported to Cathy that she had a "Negative
Appendicteal Ultrasound." On February 17, 2005, Cathy presented at the emergency
department at Mainland in Texas City. After the staff at Mainland informed her that she
would probably not see a physician that day, Cathy went home. Complaining of right
quadrant pain, Cathy went to Dr. John Stafford's office in Santa Fe, Texas, on February 18,
2005. Dr. Stafford ordered a blood count and allowed her to return home with pain
medicine. Feeling worse, Cathy went back to Mainland on February 19, 2005, and left after
waiting ten and one-half hours without seeing a physician. She returned by ambulance to
Mainland on February 20, 2005, and waited more than twelve hours before being admitted. 
Diagnosed with a ruptured appendix, she was taken to surgery. 

 The Wheelers sued Mainland and other health care providers for malpractice. The
Wheelers claimed that one of Mainland's nurses improperly "triaged" Cathy and that the 
unreasonable delay in her medical treatment at Mainland caused her to suffer a ruptured
appendix before surgery. The Wheelers served the health care providers with the expert
reports of A. Robert Tantleff, M.D. and Harold V. Gaskill III, M.D., P.A. Dr. Tantleff's
report addressed the allegations against the other defendants, and Dr. Gaskill's expert report
discussed Mainland's care and treatment of Cathy. 

 Arguing that Dr. Gaskill's report did not comply with the statute and that Dr.
Tantleff's report did not mention Mainland, Mainland filed a motion to dismiss the case
pursuant to section 74.351(b). See id. § 74.351(b). After a hearing, the trial court granted
the Wheelers a thirty day extension of time to cure any deficiencies. See id. §74.351(c). The
Wheelers timely served Mainland with a supplemental report (1) by Dr. Gaskill. 

 Dr. Gaskill's original report included the following opinions as to Mainland:


 It is also my professional opinion, to a reasonable degree of medical certainty,
that it was below the standard of care for Ms. Wheeler to be triaged as "Non-urgent" on 2/17/2005. It is also my professional opinion, to a reasonable
degree of medical certainty, that had Ms. Wheeler had laboratory studies
drawn and been evaluated by a physician on 2/17/2005 that her appendicitis
would have been diagnosed and treated at least four days earlier thereby
reducing, or even avoiding altogether, her intraperitoneal sepsis and associated
adverse outcomes. 


In his supplemental report, Dr. Gaskill stated that the standard of care requires that an adult
patient presenting with these symptoms be triaged to at least an urgent or even emergent
level. (2) Cathy presented to Mainland's emergency room on February 17, 2005, with a body
temperature of 102.5 degrees Fahrenheit, a heart rate of 115 beats per minute, and abdominal
pain. Dr. Gaskill stated that, in his professional opinion, had Cathy been triaged to at least
an urgent level, she would have been evaluated by a qualified medical provider expeditiously
and her appendicitis would have been timely diagnosed and treated. He opined that had she
been diagnosed and treated on February 17, 2005, four days earlier, her intraperitoneal sepsis
and associated adverse outcomes would have been reduced or even avoided altogether. 

 Mainland filed a second motion to dismiss arguing that Dr. Gaskill failed to provide
a factual basis for his causation opinions and he was not qualified to provide opinions on the
standard of care. Mainland also asserted that Dr. Gaskill's reports require the court to make
unsupported inferences and assumptions in order to conclude the Wheelers' claims have
merit. After a hearing, the trial court entered an order denying Mainland's motion to dismiss. 
Mainland then filed this interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(9) (Vernon Supp. 2007). 

Issues and Standards of Review

 On appeal, Mainland presents three issues: (1) whether the Wheelers served expert
reports on Mainland that complied with section 74.351's requirements; (2) whether the
Wheelers showed that Dr. Gaskill was qualified to submit an expert report in this case under
section 74.402; and (3) whether Dr. Gaskill's opinions on causation were conclusory, and
therefore, not a good faith effort under section 74.351. Mainland's first issue--that Dr.
Gaskill's expert reports fail to comply with section 74.351's requirements--is based on
Mainland's contentions in issues two and three. Therefore, by addressing issues two and
three, we address all of Mainland's issues on appeal. 

 We review a trial court's decision regarding the adequacy of a health care liability
expert report under an abuse of discretion standard. Am. Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 877-78 (Tex. 2001). A trial court abuses its discretion if it fails
to analyze or apply the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). 
 A plaintiff asserting a health care claim must timely provide each defendant health
care provider with an expert report. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The
statute defines an "expert report" as follows:

 a written report by an expert that provides a fair summary of the expert's
opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed. 


Id. § 74.351(r)(6). If a plaintiff timely furnishes the required report, the defendants may file
a motion challenging the report's adequacy. See id. § 74.351(l). 

 The trial court "shall grant a motion challenging the adequacy of an expert report only
if it appears to the court, after hearing, that the report does not represent an objective good
faith effort to comply with the definition of an expert report in Subsection (r)(6)." Id. §
74.351(l). The trial court's inquiry into whether the report represents a good faith effort is
limited to the four corners of the report. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52
(Tex. 2002)(citing Palacios, 46 S.W.3d at 878). To be a good faith effort at complying with
the expert report statute, the report "must discuss the standard of care, breach, and causation
with sufficient specificity to inform the defendant of the conduct the plaintiff has called into
question and to provide a basis for the trial court to conclude that the claims have merit." 
Palacios, 46 S.W.3d at 875. 

 A sufficient expert report does not need to marshal all of the claimant's proof. 
Wright, 79 S.W.3d at 52. The report, however, cannot merely state the expert's conclusions
regarding the required elements, but must explain the basis of the expert's statements to link
the expert's conclusions to the facts. Id. The information in the report does not have to meet
the same requirements as evidence in a summary judgment proceeding or at trial. Palacios,
46 S.W.3d at 879. 

 To qualify as an expert on whether a defendant physician departed from the standard
of medical care, the expert's report with attached curriculum vitae must demonstrate that the
expert (1) is a physician who was practicing medicine at the time the claim arose, or who is
practicing medicine at the time the testimony is given; (2) has knowledge of accepted
standards of medical care for the diagnosis, care, or treatment of the illness, injury, or
condition involved in the claim; and (3) is qualified on the basis of training or experience to
offer an expert opinion regarding those accepted standards. Tex. Civ. Prac. & Rem. Code
Ann. §§ 74.351(r)(5)(A) (Vernon Supp. 2007), 74.401(a) (Vernon 2005). In determining
whether a physician witness is qualified on the basis of training or experience, the court shall
consider whether the physician is board certified or has other substantial training or
experience in an area of medical practice relevant to the claim and is actively practicing
medicine in rendering medical care services relevant to the claim. Id. § 74.401(c). Under
the Texas Rules of Evidence, an expert must have knowledge, skill, experience, training, or
education regarding the specific issue before the court that would qualify the expert to give
an opinion on that particular subject. Tex. R. Evid. 702; Broders v. Heise, 924 S.W.2d 148,
153 (Tex. 1996). 

Dr. Gaskill's Qualifications to Offer Opinions in this Case


 Mainland first contends that the trial court abused its discretion when it denied
Mainland's motion to dismiss because the Wheelers did not show that Dr. Gaskill was
qualified to offer opinions as an expert in this case. Mainland argues that Dr. Gaskill's
position as general surgeon and his position as "co-director of trauma and emergence
services" for two medical facilities are not enough to qualify him as an expert in emergency
room triage procedures or training of nurses. Mainland maintains that Dr. Gaskill's
curriculum vitae does not support his declaration that he was "co-director of trauma and
emergent services," as stated in his first report. 

 Not every physician automatically qualifies as an expert in every area of medicine. 
See Broders, 924 S.W.2d at 152-53. However, a physician need not be a practitioner in the
same specialty as the defendant to be a qualified expert in a particular case. See id. at 153-54; see also Blan v. Ali, 7 S.W.3d 741, 745 (Tex. App.--Houston [14th Dist.] 1999, no pet.). 
Under the Texas Rules of Evidence, the test is whether the offering party has established that
the expert has knowledge, skill, experience, training, or education regarding the specific issue
before the court. Tex. R. Evid. 702; see also Roberts v. Williamson, 111 S.W.3d 113, 121
(Tex. 2003). The issue before us is whether Dr. Gaskill's report reflects that he has those
necessary qualifications to provide an opinion as to whether Mainland's failure to perform
a proper triage assessment of Cathy led to her injuries.

 Dr. Gaskill stated in his first report that he is licensed to practice medicine and surgery
in Texas and engaged in the active practice of general surgery in San Antonio, Texas. He
has been continuously certified by the American Board of Surgery since 1983 and recertified
through 2013. He stated he has served as "co-director of trauma and emergence services for
the Department of Surgery at the University of Texas Health Science Center and the
University Hospital district as listed on [his] curriculum vita [sic]." In his original report, Dr.
Gaskill prefaced his opinions with the following:

 Based on my experience I declare that I have knowledge of the acceptable
standards of medical and nursing care that are applicable to this patient. This
experience includes triage and management in the emergency department as
well as surgical management of abdominal pain, including appendicitis, and
expected outcomes. I am qualified on the basis of my education, training, and
experience to provide an expert opinion regarding the care provided to Cathy
Wheeler.


In his supplemental report, he stated he based his opinions on his "education, training, and
experience as well as the accepted principles of triage and evaluation of patients presenting
to the emergency department[.]" 

 Dr. Gaskill's first report establishes he has experience in triage and emergency
department management, as well as surgical management of abdominal pain, including
appendicitis. His curriculum vitae evidences he has, among many other things listed, been
certified in Advanced Trauma Life Support, served on the Trauma Clinical Management
Team at University Hospital and authored publications on both trauma and diagnosing
appendicitis. Dr. Gaskill based his opinions on his review of Cathy's medical records. 
Under the facts presented, we cannot conclude the trial court abused its discretion in
accepting Dr. Gaskill's qualifications to render an opinion regarding the standard of care that
Mainland was required to meet in evaluating and classifying Cathy during triage. We
overrule Mainland's second issue.


Dr. Gaskill's Opinions as to Causation


 Mainland argues Dr. Gaskill's opinions on causation are conclusory and include
several "analytical gaps" between the facts in the report and his opinion on proximate cause. 
Mainland contends the report forces the court to make inferences and assumptions on the
element of causation. Specifically, Mainland states that Dr. Gaskill's opinions on causation
are conclusory because they are based on the assumptions and inferences that (1) a triage
classification of "urgent" would have resulted in a doctor's seeing Cathy before she decided
to leave the emergency room without treatment; (2) seeing a doctor on February 17, 2005,
would have probably resulted in the diagnosis and treatment of appendicitis; (3) there is a
particular treatment that would have probably cured her of appendicitis, prevented her
appendix from rupturing, and prevented her abdominal infection; and (4) her appendix had
not ruptured prior to her visit to Mainland on February 17, 2005. 

 Dr. Gaskill's reports address how Mainland's conduct has been called into question,
as well as the causal relationship between Mainland's alleged failure to properly assess Cathy
during triage and Cathy's injuries. Gaskill's reports recite that on February 20, 2007, Cathy
was found to have a perforated appendix resulting in intra-abdominal sepsis and associated
complications. She required extensive surgery and an extended hospitalization. It was his
expressed opinion that if not for Mainland's breach of the standard of care, with the
symptoms that Cathy presented at the emergency room, Cathy would have been seen and
evaluated by qualified medical personnel, and "would have been spared the generalized
intraperitoneal sepsis that necessitated more extensive surgery and an extended
hospitalization." His reports presented sufficient information to "provide a basis for the trial
court to conclude that the claims have merit." Wright, 79 S.W.3d at 52 (citing Palacios, 46
S.W.3d at 879). We conclude Dr. Gaskill's reports represent a good faith effort to comply
with the definition of an expert report. See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(r)(6). Mainland's third issue is overruled.

Conclusion


 We conclude that the trial court did not abuse its discretion in ruling that Dr. Gaskill's
reports meet the requirements of expert reports under Texas law. See id. § 74.351. As a
result, the trial court did not abuse its discretion in denying Mainland's motion to dismiss. 
We overrule appellant's issues on appeal and affirm the trial court's order.

 AFFIRMED.

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on March 14, 2008

Opinion Delivered April 10, 2008


Before McKeithen, C.J., Gaultney and Kreger, JJ.

1. On appeal, the Wheelers concede that Dr. Gaskill's reports are the only reports
addressing their claims against Mainland.
2. In Dr. Gaskill's supplemental report he sets out the American Hospital Association's
guidelines for classification of emergency patients:


 Emergent - Requires immediate medical attention. Delay is
harmful to patient. Disorder is acute and potentially threatens
life or function.

 

 Urgent - Requires medical attention within a few hours. In
danger if not attended. Disorder is acute but not necessarily
severe.

 

 Non-urgent - Does not require the resources of an emergency
service. Disorder is minor or non-acute.