NUMBER 13-08-148-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

GORDON E. LANDRETH, ET AL., Appellants,


v. 


LAS BRISAS COUNCIL OF

CO-OWNERS, INC., Appellee.

 


On appeal from the 214th District Court 

of Nueces County, Texas


 


OPINION


Before Justices Yañez, Garza, and Vela


Opinion by Justice Vela


 This is an interlocutory appeal from an order denying the amended motion of
appellants, Gorden E. Landreth and Cotten, Landreth, Kramer Architects & Associates,
Inc.'s (collectively "Cotten Landreth") to dismiss a case alleging architectural malpractice. 
By three issues, appellants argue that the trial court abused its discretion in failing to
dismiss the case filed against them. We reverse and remand. 

I. Background

 Las Brisas Council of Co-Owners, Inc. ("Las Brisas"), appellee, is a condominium
regime. It is composed of approximately eighty condominium owners. Appellants are an
architect and an architectural firm. Las Brisas stated in its pleadings that it entered into a
contract with Cotten Landreth to perform a comprehensive investigation of the physical
conditions of the Las Brisas condominium building and develop a proposed maintenance
program for Las Brisas's use. In 2003, Cotten Landreth recommended that Las Brisas
retain Ferdinand & Geissel, Inc. ("F&G") to perform a renovation project. In November
2003, Las Brisas and F&G entered into an agreement to make improvements and repairs
to the common areas of the condominium. 

 Las Brisas claims that it expected Cotten Landreth to provide architectural services
in conjunction with the renovation work performed by F&G. (1) Cotten Landreth did not
perform as Las Brisas expected. Las Brisas brought suit against Cotten Landreth 
complaining of breach of agency, breach of fiduciary duty, negligence, negligent
misrepresentation and breach of contract. 

 After suit was filed, Las Brisas submitted a certificate of merit, signed by James R.
Drebelbis, in an attempt to meet the requirements of section 150.002 of the civil practice
and remedies code. Tex. Civ. Prac. & Rem. Code Ann. § 150.002 (Vernon Supp. 2008). 
This statute requires a plaintiff to file an affidavit of a third party licensed architect
practicing in the same area as defendant, setting forth specifically at least one negligent
act, error, or omission. Id. In his original certificate of merit, filed on March 26, 2007,
Drebelbis stated that he was a licensed architect in Texas as well as a licensed
professional engineer. Drebelbis averred that he is currently and has been actively
engaged in the practice of architecture and engineering for more than thirty-five years. He
claimed that he had performed engineering and architectural work on numerous structures,
including design, specification, and detailing associated with "defining the components
found therein." Drebelbis further opined that he had personal knowledge of the acceptable
standards for the practice of architectural services in Texas. Based on his education,
professional experience and review, he opined that Cotten Landreth failed to perform
architectural services according to accepted industry standards. His affidavit included
specific acts of negligence. His affidavit did not state that Drebelbis was practicing in the
same area of architecture in which Cotten Landreth practices. Cotten Landreth filed a
motion to dismiss, but did not pursue it. Rather, it proceeded with discovery.

 On November 29, 2007, Drebelbis signed another affidavit similar to his original one. 
Thereafter, in response to Cotten Landreth's amended motion to dismiss, Las Brisas filed
a third affidavit prepared by Drebelbis. 

 In his last affidavit, signed on March 3, 2008, Drebelbis opined that during his thirty-five-year career as an architect he had been actively engaged in the practice of
architecture. Drebelbis's new affidavit also stated that Cotten Landreth's proposal to Las
Brisas offered to provide services with respect to developing a comprehensive investigation
of the physical conditions of the existing facility. He said that the type of services Cotten
Landreth was asked to perform is similar to the identification and assessment of defects
he performs while conducting a forensic investigation. 

 In this affidavit, Drebelbis also added that he had reviewed Cotten Landreth's
website and that its range of services is similar in many respects to the identification and
assessment of defects performed when conducting a forensic investigation. He stated that
during the years that he has "provided architectural services--including the period of time
I have been engaged in my forensic architectural practice--I have provided services to my
clients that are the same as, or very similar to, the architectural services [Cotten Landreth]
claims to provide is clients and that [Cotten Landreth] specifically proposed to provide Las
Brisas in this matter." 

 The first affidavit says nothing about practicing in the same area and the last
affidavit says that he has provided similar services during the period of time he has
engaged in his forensic practice. However, even the last affidavit does not state that he
is currently practicing in the same area of practice as Cotten Landreth or that he was
practicing in the same area of practice at the time he filed his initial affidavit. (2)

 In fact, during his deposition, Drebelbis unequivocally stated that Cotten Landreth
was engaged in design restoration architecture. He also said that he didn't believe that he
had ever worked as a design restoration architect, either as a lead architect or in any other
capacity, on a building similar to the size of Las Brisas that was located either on the Gulf
Coast or the ocean. In fact, Drebelbis said that he does not seek design restoration work
and does not engage in that area of practice. 

 After an oral hearing, the trial court denied the motion to dismiss. By three issues,
Cotten Landreth claims that it was entitled to judgment. Cotten Landreth argues that: (1)
the affidavit prepared by Drebelbis does not comply with Section 150.002 of Texas Civil
Practice and Remedies Code, because: (1) Drebelbis admitted that he has not been
practicing in the same area as Cotten Landreth for the last twenty-five years; (2) the trial
court erred in considering any of Drebelbis's amended or supplemental affidavits; and (3)
the trial court erred in failing to dismiss all claims against Cotten Landreth because all of
Las Brisas's claims, including breach of contract, breach of fiduciary duty, and negligent
misrepresentation, are merely attempts to recast its claim of professional negligence.

II. Standard of Review

 An order granting or denying a motion to dismiss under chapter 150 of the Texas
Civil Practice and Remedies Code is immediately appealable as an interlocutory order. Id. 
§ 150.002 (e). This Court reviews the denial of a defendant's motion to dismiss pursuant
to section 150.002 under an abuse of discretion standard. Criterium-Farrell Eng'rs v.
Owens, 248 S.W.3d 395, 397 (Tex. App.-Beaumont 2008, no pet.); see also Palladian
Bldg. Co., Inc. v. Nortex Found. Designs, Inc., 165 S.W.3d 430, 433 (Tex. App.-Fort Worth
2005, no pet.); Gomez v. STFG, Inc., No. 04-07-00223-CV, 2007 WL 2846419, at *1 (Tex.
App.-San Antonio Oct. 3, 2007, no pet.) (mem. op.). Merely because a trial court may
decide a matter within its discretion in a different manner than an appellate court does not
demonstrate an abuse of discretion. Palladian, 165 S.W.3d at 433. 


 Statutory construction is a question of law we review de novo. Id. at 436. Once we
determine the statute's proper construction, we must then decide whether the trial court
abused its discretion in applying the statute. Id. A trial court has no discretion in
determining what the law is or applying the law to the facts. Walker v. Packer, 827 S.W.2d
833, 840 (Tex. 1992). 

III. Applicable Law

 Section 150.002 provides, in relevant part:

 § 150.002. Certificate of Merit

 (a) in any action . . . for damages arising out of the provision of professional
services by a licensed . . . professional, the plaintiff shall be required to file
with the complaint an affidavit of a third-party licensed architect . . . .
competent to testify, holding the same professional license as, and
practicing in the same area of practice as the defendant, . . . [setting]
forth specifically at least one negligent act, error, or omission claimed to exist
and the factual basis for each such claim.

 . . . .


 (c) The defendant shall not be required to file an answer to the complaint and
affidavit until 30 days after the filing of such affidavit.


 (d) The plaintiff's failure to file the affidavit in accordance with Subsection (a)
or (b) shall result in dismissal of the complaint against the defendant. This
dismissal may be with prejudice. 


 (e) An order granting or denying a motion for dismissal is immediately
appealable as an interlocutory order. 


Tex. Civ. Prac. & Rem.Code Ann. § 150.002(a), (c)-(e). (emphasis added).

 

 Chapter 150 may have been enacted to limit actions against architects and
engineers by ensuring that there is some basis for the lawsuit. See Michael S. Hull et al.,
House Bill 4 and Proposition 12: An Analysis with Legislative History, Part Two, 36 Tex.
Tech. L. Rev. 51, 54 (2005). In Palladian, the court acknowledged that there was no
legislative history to support what the legislature intended in enacting the statute. 
Palladian, 165 S.W.3d at 436. 

 A court looks first to the language of the statute and presumes that the legislature
intended the plain meaning of its words. Fleming Foods of Tex. Inc. v. Rylander, 6 S.W.3d
278, 286 (Tex. 1999). In determining the plain meaning of a statute, we are guided by
section 311.011 of the Texas Government Code (the Code Construction Act), which
provides for the common and technical use of the words in the Code. See Tex. Gov't
Code Ann. § 311.011 (Vernon 2005). Every word of a statute must be presumed to have
been used for a purpose, and every word excluded from a statute must also be presumed
to have been excluded for a purpose. 

IV. Analysis

 Cotten Landreth argues in its first issue that the initial affidavit of Drebelbis does not
satisfy section 150.002 because Drebelbis was not "practicing" in the same area as the
Cotten Landreth architects. Cotten Landreth urges that its services in this dispute involved
providing repairs necessary to prolong the life of the Las Brisas condominium building and
to provide contract administration services during the construction, including review of the
general contractor's payment applications. Cotten Landreth refers to this type of work at
"design restoration work." They urge that Drebelbis's work is in the nature of forensic
architecture and that he is not "practicing" in the same area. Neither "design restoration"
nor "forensic architecture" are defined in the statute or occupations code. See Tex. Occ.
Code Ann. § 1051.001 (7)(A)-(H) (Vernon Supp. 2008). (3) Drebelbis's first affidavit states
that:

 (1) He is a registered architect.


 (2) He is currently and has been actively engaged in the practice of
architecture and engineering for over 35 years.


 (3) He has performed engineering and architectural work including the
"design, specification, and detailing associated with defining the components
found therein."

 

 (4) He has personal knowledge of the accepted standards for the practice
of architectural services through the duration of a project from the initial
design through construction.

 

 (5) He reviewed the architectural and construction documents produced by
Las Brisas.

 

 (6) He stated that Cotten Landreth failed to perform architectural services
according to industry standards in several respects, including: negligently
providing thorough drawings, allowing a vague and imprecise report based
on a cursory review of the condition of the premises, allowing an unsealed
document to be used as the contract documents for a significant construction
project, etc. 

 

 (7) He opined that Cotten Landreth did not meet the standard of care
common to the architectural industry.

 

 Cotten Landreth's primary argument in this case is that the original affidavit does not
specifically state that Drebelbis was "practicing in the same area of practice." See Tex. Civ.
Prac. & Rem. Code Ann. § 150.002 (a). Cotten Landreth is correct. Cotten Landreth also
relies on deposition testimony that shows that Drebelbis is not practicing in the same area
as Cotten Landreth. It further urges that Drebelbis's last affidavit is a sham affidavit
because it negates his earlier deposition testimony. 

 Because section 150.002 is a relatively new statute, there is no case law that
interprets what the phrase "the same area of practice" means. There is also nothing in the
plain language of the statute or the case law to provide that additional or supplemental
affidavits may be filed to attempt to comply with the statute. Finally, there is nothing in the
statute or case authority suggesting one way or the other, whether the trial court or
reviewing court may look outside the "four corners" of the affidavit to a deposition or other
discovery in order to interpret the affidavit filed pursuant to the statute.

 Las Brisas urges a broad construction--Drebelbis's first affidavit is sufficient
because it establishes that he was practicing as an architect, rather than requiring that he
specifically state that he was practicing in the specific area that Cotten Landreth was
practicing in. Las Brisas claims that Cotten Landreth was hired to perform a
comprehensive investigation of the physical conditions of the Las Brisas building and that
this conduct occurred well before the "design restoration" project began. In other words,
according to Las Brisas, Cotten Landreth was performing forensic architectural services
before it began its design restoration services, so it was practicing in the same area as
Drebelbis. 

 The statute appears to require initial criteria to be met with regard to the affiant's
qualifications. First, the affiant must be a registered architect. Tex. Civ. Prac. & Rem.
Code Ann. § 150.002(a). Drebelbis's affidavit sufficiently states his professional
registration. Second, the architect must be licensed in Texas. Id. Drebelbis's affidavit also
satisfies this part of the statute. Id. Finally, the professional must actively be practicing. 
Id. Again, Drebelbis's affidavit is sufficient in this regard. In addition, however, the statute
states that the architect or professional must be practicing "in the same area of practice as
the defendant." Id. 

 Cotten Landreth urges that we should look for guidance to the Medical Liability and
Insurance Improvement Act (MLIIA) in determining what is required of an affidavit under
the statute at issue here. See Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351, 74.401(a)(2)
(Vernon 2005 & Supp. 2008). The MLIIA modified the liability laws for health care claims
to address what the Legislature described as a medical "crisis [that] has had a material
adverse effect on the delivery of medical and health care in Texas." Act of May 30, 1977,
65th Leg., R.S., ch. 817, § 1.02(a)(6), 1977 Tex. Gen. Laws 2039, 2040 (former Tex. Rev.
Civ. Stat. art. 4590i, § 1.02(a)(6)); see also Act of June 2, 2003, 78th Leg., R. S., ch. 204,
§ 10.11, 2003 Tex. Gen. Laws *847, 884 (reiterating the Legislature's concern about the
gravity of an ongoing "medical malpractice insurance crisis" caused in part by an increased
number of health care liability claims since 1995); Villafani v. Trejo, 251 S.W.3d 466, 468
(Tex. 2008); Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005). 

 Part of the amendments to the medical malpractice statute require plaintiffs to timely
file an expert report that includes a fair summary of the expert's opinions on the applicable
standards of care, the manner in which the care rendered by the defendant physician or
health care provider failed to meet those standards, and the causal relationship between
that failure and the injury, harm, or damages claimed. Here the certificate of merit must
similarly set forth at least one negligent act, error, or omission and the factual basis for
each such claim. See Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a). No statement of
causation is required under section 150.002. 

 The legislature enacted the MLIIA to stem what it believed was an insurance crisis. 
In determining whether a witness is qualified to testify in a medical malpractice case, a
court must consider whether the witness is actively practicing medicine in an area of
practice relevant to the claim. See id. § 74.401(c)(2). The malpractice statute does not
require the expert testifying in a medical malpractice case to be a specialist in the particular
branch of the profession for which testimony is offered; the statute setting out the requisite
qualifications focuses not on the defendant doctor's area of expertise, but on the condition
involved in the claim. Blan v. Ali, 7 S.W.3d 741, 746 (Tex. App.-Houston [14th Dist.] 1999,
no pet.). It requires that the expert have the "knowledge, skill, experience, training, or
education regarding the specific issue before the court which would qualify the expert to
give an opinion on that particular subject." Roberts v. Williamson, 111 S.W.3d 113, 121
(Tex. 2003) (quoting Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996).

 Here, however, the design professional statute specifically requires the initial
affidavit to be filed contemporaneously with the complaint by a design professional who is
registered or licensed "and practicing in the same area of practice as the defendant." §
150.002(a). (emphasis added). The initial affidavit filed by Drebelbis does not meet that
standard. Drebelbis simply does not state in his affidavit that he practices in the same area
of practice as Cotten Landreth. Further, there is no language in his affidavit that shows he
is practicing in the same area of practice as Cotten Landreth.

 The medical malpractice statute also allows a party filing a deficient report one
thirty-day extension to cure a deficiency. See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(c). The design professional statute does not. Rather, it states that the
contemporaneous filing requirement does not apply if the period of limitations will expire
within ten days of filing and there are time constraints. See id. § 150.002(b). Because the
design professional statute does not, by its plain language, allow for amendment under the
circumstances presented here, we believe the statute required the trial court to look only
to the initial affidavit filed by Drebelbis. Amended and supplemental affidavits are not
contemplated by the plain wording of the statute. Had the legislature desired to give a
design professional an opportunity to correct the affidavit, it could have provided it in the
same manner it did in the medical malpractice statute. See id. § 74.351(c). Under the
plain language of the statute, Drebelbis's later affidavits may not be considered. (4) 

 The supreme court has also instructed that when interpreting the medical liability
statute, a report is limited to what is contained within its "four corners." See Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001). Because
the statute focuses on what the report discusses, the only information relevant to the
inquiry is the information contained within the four corners of the document. Id. Likewise,
the statute here focuses on what the design professional's report must discuss. Because
nothing in the statute suggests or anticipates that the trial court may look outside of the
"four corners" of the report for guidance, we hold, under the plain language of the statute,
it cannot. 

 By enacting the statute at issue here, the legislature did not specifically identify a
crisis that needed to be averted as it did when enacting the medical malpractice act. The
statute's plain language does not allow much latitude. Because we have previously
determined that the original certificate of merit did not meet the basic statutory
requirements of section 150.002, as it does not state that Drebelbis was practicing in the
same area of practice as the defendant, the trial court abused its discretion in denying the
motion to dismiss. We further hold that, because the statute does not include language
allowing additional or amended affidavits to be filed, the trial court did not have the
authority to consider Drebelbis's other affidavits in determining whether the case should
be dismissed. We sustain Cotten Landreth's first and second issues.

 By its third issue, Cotten Landreth claims that the trial court abused its discretion in
failing to dismiss Las Brisas's other causes of action. Again, we rely on the plain wording
of the statute, which applies only to claims for professional services. If a plaintiff was not
claiming a negligent act, error or omission, a certificate of merit is not required. See Tex.
Civ. Prac. & Rem. Code. Ann. § 150.002(a); see also Gomez v. STFG, Inc. 2007 WL
2846419, at *2. In Gomez, our sister court held that non-negligence claims are outside the
scope of professional services. 2007 WL 2846419, at *2. There, the court held that
chapter 150 acknowledges that "a certificate of merit requirement will not apply to all suits
involving professional engineers and architects because it limits the requirement to actions
arising out of the provision of professional services and specifically excludes suits
regarding the payment of fees." Id.; see Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a),
(g). The Gomez court opined that claims of breach of contract, wrongful termination,
breach of good faith and fair dealing, breach of fiduciary duty and breach of loyalty should
not be included in chapter 150's requirements. Id. at *3. We agree with the San Antonio
court that a certificate of merit does not require dismissal of an entire case, but rather
requires dismissal of only those causes of action arising from the provision of professional
services. Because the trial court did not, in fact, make any ruling in this regard, it would be
advisory for this Court to decide which of the pleadings are claims for professional services
and which are not. We overrule Cotten Landreth's third issue. 

V. Waiver

 Las Brisas also argues that Cotten Landreth waived its right to dismissal through
participation in discovery, taking depositions, and filing a motion for summary judgment. 
We note that the statute is silent with regard to a deadline to file a motion to dismiss. The
legislature has imposed deadlines when it intends to do so. See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351 (establishing a twenty-one day deadline to object to an expert report
in a health care liability claim). Waiver is an intentional relinquishment of a known right or
intentional conduct inconsistent with claiming a right. Sun Exploration & Prod. Co. v.
Benton, 728 S.W.2d 35, 37 (Tex. 1987). In Jernigan v. Langley, the supreme court held
that a physician who had waited 600 days after receiving an expert report to move for
dismissal of the claim did not waive his right to pursue a motion to dismiss under the health
care liability statute. 111 S.W.3d 153, 157 (Tex. 2003). Here, the statute does not contain a deadline. Cotten Landreth took Drebelbis's
deposition on February 20, 2008. It is there that Cotton Landreth learned that Drebelbis
did not practice in the same area. Eight days later, Cotten Landreth filed its amended
motion to dismiss. There was no evidence in the record showing an intent to waive its right
to dismissal under the statute. 

 VI. Conclusion

 We reverse and remand the order of the trial court for further proceedings consistent
with this opinion. 




 ROSE VELA

 Justice



Opinion delivered and filed 

this 5th day of February, 2009.

 
1. Las Brisas filed suit against F&G for breach of contract and breach of warranty. Las Brisas also filed
suit against Mark Treen, individually and doing business as Streem Company and L&M Construction
Chemicals. None of these parties are before the Court in this interlocutory appeal.
2. The statute states that the failure to file an affidavit in accordance with Subsection (a) or (b) shall
result in dismissal of the complaint. The dismissal may be with prejudice. Tex. Civ. Prac. & Rem. Code Ann.
§ 150.002 (d) (Vernon Supp. 2008). Section 150.002 allows a trial court to dismiss with or without prejudice. 
LJA Engineering and Surveying, Inc. v. Richfield Investment Corp., 211 S.W.3d 443, 446 (Tex.
App.-Beaumont 2006, no pet.) Rather than allow for amendment, the statute permits dismissal without
prejudice.
3. The term "practice of architecture" includes:


(A) establishing and documenting the form, aesthetics, materials, and construction
technology for a building, group of buildings, or environs intended to be constructed or
altered;


(B) preparing, or supervising and controlling the preparation of, the architectural plans and
specifications that include all integrated building systems and construction details, unless
otherwise permitted under Section 1051.606(a)(4);


(C) observing the construction, modification, or alteration of work to evaluate conformance
with architectural plans and specifications described in Paragraph (B) for any building, group
of buildings, or environs requiring an architect;


(D) programming for construction projects, including identification of economic, legal, and
natural constraints and determination of the scope and spatial relationship of functional
elements;


(E) recommending and overseeing appropriate construction project delivery systems;


(F) consulting, investigating, and analyzing the design, form, aesthetics, materials, and
construction technology used for the construction, enlargement, or alteration of a building or
environs and providing expert opinion and testimony as necessary;


(G) research to expand the knowledge base of the profession of architecture, including
publishing or presenting findings in professional forums; and


(H) teaching, administering, and developing pedagogical theory in academic settings offering
architectural education.




 
4. If the trial court dismisses without prejudice, a plaintiff would have an opportunity to file an affidavit
in the case when refiled.