

**NUMBER 13-08-00222-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **JOSE R. CARRERAS, M.D.,** | **Appellant,** |
| **v.** | |
| **JULIAN TREVINO,** | **Appellee.** |

### On appeal from the County Court at Law No. 5
### of Hidalgo County, Texas.

# O P I N I O N

### Before Chief Justice Valdez and Justices Yañez and Benavides
### Opinion by Chief Justice Valdez

Appellant, Jose R. Carreras, M.D., appeals the denial of his motion to dismiss a healthcare liability claim brought by appellee, Julian Trevino. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008). In a single issue, Carreras contends that the trial court abused its discretion by finding that the statutorily required expert medical report was

adequate because it was rendered by a physician who did not demonstrate his qualification. *Id*. § 74.351 (Vernon Supp. 2008), § 74.401 (Vernon 2005). We reverse and remand.

## I. BACKGROUND

On April 17, 2006, Carreras, an orthopedic surgeon, performed a total right knee replacement surgery on Trevino. At several post-operative follow-up visits with Carreras, Trevino complained of severe and disabling pain, but Carreras allegedly ignored Trevino's concerns. Trevino was then treated by a different orthopedic surgeon, who performed a second total right knee replacement.

On August 28, 2007, Trevino filed a healthcare liability claim against Carreras alleging that:

1.    The surgery was incomplete or inadequate in that the total knee replacement was not properly aligned, resulting in extreme pain.

2.    The surgery was incomplete or inadequate in that the femoral component of the prosthesis was loose.

3.    The surgery was incomplete or inadequate in that the tibial component of the prosth[esis] was undersized.

4.    The surgery was incomplete or inadequate in that there were pieces of methyl methacrylate remaining in the joint.

5.    When [Trevino] returned to Dr. Carreras on multiple occasions complaining of severe and disabling pain in the right knee, the Doctor failed [to] inquire, test, and evaluate the surgery to determine that the total knee replacement was incomplete or inadequate.

6.    Dr. Carreras relied upon pain medication and anti-inflammatory medication for patient control rather than discovering the problem with the surgery and correcting it.

Carreras answered with a general denial. On December 21, 2007, Trevino, in an effort to comply with section 74.351's expert report requirement, tendered the affidavit and curriculum vitae of William R. Martin, M.D. *See id.* Martin, an interventional radiologist, provided the following pertinent affidavit testimony:

> I have knowledge of the accepted standards of medical care for the diagnosis, prevention, care, treatment and cure of knee degeneration and the diagnosis, prevention, care, treatment and cure of knee replacement by virtue of my education, training and experiences in treating patients who sustained knee injuries and who had knee degeneration either due to natural processes such as osteoarthritis, or due to the effect of their injuries.
>
> I have reviewed medical records provide[d] from Dr. Carreras and Dr. Marina [the orthopedic surgeon who performed the second total right knee replacement], including the operative reports. I have not been provided with x-rays taken before or after the right knee replacement.
>
> . . . .
>
> Based on [a review of the] record, and my own experience and expertise, I conclude that Dr. Carreras was below the relevant standard of care in [his] care and treatment of Julian Trevino on April 17, 2006 in that 1) he did not properly align and secure the jig for cutting the tibia and femur in Mr. Trevino's right knee, 2) he did not properly align and secure the prosthesis for the knee, and 3) he did not perform a final flexion testing of the knee before closing the surgical wound and after cementing the prosthesis to the knee bones. It is further my opinion that Dr. Carreras was below the relevant standard of care in his care and treatment of Julian Trevino from April 17, 2006 to August 30, 2006 in disregarding Mr. Trevino's complaint of abnormal pain, and not discovering the misalignment of the knee. It is further my opinion that the neglect by Dr. Carreras was a cause of the additional surgical procedures . . . .

On January 9, 2008, Carreras objected to Martin's report on the grounds that (1) Martin was not qualified to offer an expert medical opinion, and (2) the report was conclusory as to causation. Carreras moved for dismissal and an award of attorney's fees. Trevino responded by arguing that Martin was qualified on the ground that "it is common knowledge that orthopedic surgeons and radiologists work closely together." *See Silvas*

3

*v. Ghiatas*, 954 S.W.2d 50, 54 (Tex. App.–San Antonio 1997, pet. denied) (concluding, in the review of a summary judgment, that an orthopedic surgeon who has written scholarly articles about skeletal radiology is competent to testify in a healthcare liability suit against a radiologist). In the alternative, Trevino sought a thirty-day extension to cure any defects that the trial court might find in Martin's report. The trial court denied Carreras's motion to dismiss. This interlocutory appeal followed.

## II. Discussion

In a single issue, Carreras argues that the trial court erred in overruling his challenge to the adequacy of Martin's report on the ground that Martin did not demonstrate his qualification to render an expert opinion in this case. Trevino responds by arguing that interventional radiology is a surgical speciality, and therefore, Martin is qualified under section 74.401(a)'s "training or experience" element. We disagree.

### A.    Standard of Review

We review a trial court's determination as to the qualification of a witness as an expert for an abuse of discretion. *Larson v. Downing*, 197 S.W.3d 303, 304-05 (Tex. 2006) (citing *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996)); *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 220 (Tex. App.–Houston [1st Dist.] 2003, pet. denied). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Lookshin v. Feldman*, 127 S.W.3d 100, 103 (Tex. App.–Houston [1st Dist.] 2003, pet. denied). We do not disturb the trial court's discretion absent clear abuse. *Larson*, 197 S.W.3d at 304 (citing *Broder*s, 924 S.W.2d at 151).

### B.    Applicable Law

To be qualified to provide opinion testimony regarding whether a physician departed

from the accepted standard of health care, an expert must satisfy section 74.401 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(A). Section 74.401 provides in pertinent part:

(a) In a suit involving a health care liability claim against a physician for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

. . . .

(c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and

(2) is actively practicing medicine in rendering medical care services relevant to the claim.

*Id.* § 74.401(a), (c). A trial court may "depart from [these] criteria if, under the circumstances, the court determines that there is a good reason to admit the expert's testimony," but, if the court does so, it must state the reason for the departure on the record. *Id.* § 74.401(d).

In addition to section 74.401, the trial court's decision on a medical expert's qualification is also guided by a wealth of common-law principles. *See, e.g., Philipp v.*

5

*McCreedy*, No. 04-08-00922-CV, 2009 WL 2342919, at *1 (Tex. App.–San Antonio Jul. 29, 2009, no pet. h.) ("There is no doubt that Chapter 74 has spawned a cottage industry of expert report litigation; this court alone has addressed issues relating to preliminary expert reports . . . multiple times within the past year."). In *Broders v. Heise*, the leading case on medical expert qualification, the supreme court held that not every licensed doctor is automatically qualified to testify on every medical question. 924 S.W.2d at 152. The supreme court has also held that a proffered expert need not practice in the same speciality as the defendant physician to qualify as an expert for that case. *See Roberts v. Williamson*, 111 S.W.3d 113, 122 (Tex. 2003).

According to *Roberts*, the trial court's inquiry should not focus on the specialty of the physician defendant or medical expert. *See id*. Instead, as *Broders* holds, the trial court should determine whether the proffered expert has "knowledge, skill, experience, training, or education" regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Broders*, 924 S.W.2d 153-54 (applying Texas Rule of Evidence 702); *Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App.–Houston [14th Dist.] 1999, no pet.) (holding, in an interpretation of chapter 74's predecessor, that the focus of a trial court's inquiry regarding medical expert qualifications should not be on the defendant physician's area of expertise, but on the condition involved in the claim). Therefore, a medical expert from one specialty may be qualified to testify if he has practical knowledge of what is customarily done by practitioners of a different speciality under circumstances similar to those at issue in the case. *See Keo v. Vu*, 76 S.W.3d 725, 732 (Tex. App.–Houston [1st Dist.] 2002, pet. denied)*.* If the subject matter is common to and equally recognized and developed in all fields of practice, any physician familiar with the

6

subject may testify as to the standard of care. *Id*.; *Blan*, 7 S.W.3d at 745 (noting that "[t]he Texas Supreme Court has made it clear that if a subject of inquiry is substantially developed in more than one field, a qualified expert in any of those fields may testify").

**C.    Analysis**

According to his curriculum vitae, Martin was board certified in radiology in 1980. He has training and experience in the following "interventional procedures":

> percutaneous angioplasty, embolizations, IVC filter placement, retrieval of foreign bodies, CT/US guided biopsies, percutaneous abscess drainages, perc. antegrade biliary drainage, dilation of biliary and ureteral stenosis/obstructions, perc. nephrostomies, thrombolysis, etc.

In his affidavit, Martin asserts that he has:

> . . . knowledge of the accepted standards of medical care for the diagnosis, prevention, care, treatment and cure of knee degeneration and the diagnosis, prevention, care, treatment and cure of knee replacement by virtue of my education, training and experiences in treating patients who sustained knee injuries and who had knee degeneration either due to natural processes such as osteoarthritis, or due to the effect of their injuries.

Carreras argues that Martin's curriculum vitae "blatantly contradicts" his report's assertion that he has "knowledge" of the accepted standard of medical care for knee replacement procedures and that Martin's report is conclusory in its assertion of "knowledge" of the subject matter in question. We agree.

The specific issues raised in Trevino's suit center on the surgical skill and post-operative care that Carreras rendered. In order to satisfy section 74.401(c)'s medical expert qualification requirement, and thereby constitute an adequate report, Trevino had to demonstrate that Martin had "substantial training or experience" in total knee replacement surgery and the post-operative care of such a procedure. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(c). Besides summarily asserting such "knowledge," Martin's

7

report and curriculum vitae does not demonstrate how he gained the requisite experience or training to satisfy the statute's requirement. *See Ehrlich v. Miles*, 144 S.W.3d 620, 625-26 (Tex. App.–Fort Worth 2004, pet. denied) (affirming, under chapter 74's predecessor, a trial court's ruling that an expert report drafted by a neurologist did not demonstrate his qualification to opine on the standard of care rendered by a plastic surgeon during a face lift and cheek implant procedure); *see also Garcia v. Rodriguez*, No. 13-05-00747-CV, 2007 WL 2442349, at **3-4 (Tex. App.–Corpus Christi Aug. 30, 2007, pet. denied) (memo. op.) (affirming, under chapter 74's predecessor, a trial court's ruling that an expert report drafted by a plastic and reconstructive surgeon who stated that he had treated burn victims did not demonstrate his qualification to opine on the standard of care rendered by a pulmonologist to a burn victim); *Miranda v. Martinez*, No. 13-06-00386-CV, 2007 WL 687001, at *3 (Tex. App.–Corpus Christi Mar. 8, 2007, pet. denied) (memo. op.) (reversing a trial court's ruling that an expert report drafted by an obstetrician and gynecologist demonstrated that he was qualified to opine on another OBGYN's allegedly negligent act of leaving a sponge in a patient after a C-section because the proffered expert "simply inform[ed] the trial court that [he] was a doctor with a specialty in either gynecology or obstetrics (or both) [and] did not address any of the factors that ultimately determine whether one is a qualified expert—i.e., knowledge, skill, experience, training, and education.").

We hold that Martin's report is inadequate because it does not demonstrate that he is qualified to render an expert medical opinion in this case and the trial court abused its discretion by not granting Carreras's motion to dismiss. Accordingly, Carreras's sole issue is sustained.

### III. CONCLUSION

We reverse the trial court's order denying Carreras's motion to dismiss and remand this case to the trial court to consider whether to grant Trevino a thirty-day extension to file an adequate expert report.[1]

_____

                                            ROGELIO VALDEZ
                                            Chief Justice

Opinion delivered and filed this
25th day of August, 2009.

---

[1] The supreme court has held that section "74.351's plain language permits one thirty-day extension when the court of appeals finds deficient a report that the trial court considered adequate." *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008). Accordingly, the trial court should have an opportunity to consider granting Trevino an extension to cure the deficiencies detailed in this opinion.