02-11-231-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.  02-11-00231-CV

 

 


 
 
 Olga Cortez, M.D., Medical Clinic of North Texas,
 P.A., and Denton Obstetrics & Gynecology, P.A.
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Elizabeth Ebben Tomas
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 431st
District Court OF Denton COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          In
this interlocutory appeal,[2] Appellants Olga Cortez,
M.D., Medical Clinics of North Texas, P.A., and Denton Obstetrics and
Gynecology, P.A. contend that the trial court abused its discretion by denying
their motion to dismiss the healthcare liability claim filed against them by
Appellee Elizabeth Ebben Tomas.  Appellants contend in five issues that Tomas
failed to provide an expert report as defined by civil practice and remedies
code section 74.351[3] because the expert is not
qualified to address the applicable standard of care or causation and because
the expert’s report does not adequately set forth the applicable standard of
care, breach of the standard of care, or causation.  We affirm in part and reverse
and remand in part.

II. 
Background

          Tomas
filed suit against Appellants in August 2010 alleging medical negligence during
and after a surgery to remove Tomas’s ovary.  Tomas pleaded that she had her gallbladder
surgically removed in July 2008 and that the surgeon noted a cyst on her ovary
during the surgery.  Tomas’s primary care physician referred her to Dr. Cortez
for examination of the ovarian cyst, and Dr. Cortez recommended surgical removal
of Tomas’s ovary.

          Tomas
alleged that she expressed concern to Dr. Cortez about undergoing another
surgery so soon but that Dr. Cortez represented that she had spoken with
Tomas’s prior surgeon who indicated that a second surgery would not be a
problem.[4]  Tomas thereafter agreed
to undergo the second surgery, which Dr. Cortez performed.  Tomas alleged that
Dr. Cortez “sliced [Tomas]’s small bowel during the surgery and either never
noticed it or attempted to cover up the problem.”  Tomas further alleged that
she “developed a severe wound, became septic[,] had to undergo a subsequent
bowel operation” eight days later, “was hospitalized for many months,” and “is
still undergoing medical treatment.” Tomas alleged that Medical Clinics of
North Texas, P.A. and Denton Obstetrics and Gynecology, P.A. are vicariously
liable for Dr. Cortez’s alleged negligence.

          Tomas
filed and served the curriculum vitae (CV) and expert report of Dr. Michael
Heard.  Appellants objected to Dr. Heard’s CV and report and filed a motion to
dismiss Tomas’s claims.  The trial court conducted a hearing and denied
Appellants’ motion to dismiss.  Appellants then filed notice of this
interlocutory appeal.

III. 
Standard of Review

          A
trial court’s ruling concerning an expert report under section 74.351 (formerly
article 4590i, section 13.01) of the Medical Liability and Insurance Act is
reviewable under the abuse of discretion standard.  See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351; Bowie Mem’l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002); Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 875 (Tex. 2001).  To determine whether a trial
court abused its discretion, we must decide whether the trial court acted
without reference to any guiding rules or principles; in other words, we must
decide whether the act was arbitrary or unreasonable.  Cire v. Cummings,
134 S.W.3d 835, 838–39 (Tex. 2004).  An appellate court cannot conclude that a
trial court abused its discretion merely because the appellate court would have
ruled differently in the same circumstances.  Bowie Mem’l, 79
S.W.3d at 52; E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d
549, 558 (Tex. 1995).

IV. 
Statutory Requirements

A
health care liability claimant must serve an expert report on each defendant no
later than the 120th day after the claim is filed.  See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(a).  A defendant may challenge the adequacy
of a report by filing a motion to dismiss, and the trial court must grant the
motion to dismiss if it finds after a hearing that “the report does not
represent an objective good faith effort to comply with the definition of an
expert report” in the statute.  Id. § 74.351(l).  While the expert
report “need not marshal all of the plaintiff’s proof,” it must provide a fair
summary of the expert’s opinions as to the “applicable standard of care, the
manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.”  Id. § 74.351(r)(6); Palacios,
46 S.W.3d at 878 (construing former article 4590i, § 13.01).  

To
constitute a good faith effort, the report must discuss the standards of care,
breach, and causation with sufficient specificity (1) to inform the defendant
of the conduct the plaintiff has called into question and (2) to provide the
trial court with a basis to conclude that the claims have merit.  See Bowie
Mem’l, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 879.  A report
does not fulfill this requirement if it merely states the expert’s conclusions
or if it omits any of the statutory requirements.  Bowie Mem’l, 79
S.W.3d at 52; Palacios, 46 S.W.3d at 879.  But the information in the
report “does not have to meet the same requirements as the evidence offered in
a summary-judgment proceeding or at trial.”  Palacios, 46 S.W.3d
at 879.  

          When
reviewing the adequacy of a report, the only information relevant to the
inquiry is the information contained within the four corners of the document.  Bowie
Mem’l, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 878.  This
requirement precludes a court from filling gaps in a report by drawing
inferences or guessing as to what the expert likely meant or intended.  See
Austin Heart, P.A. v. Webb, 228 S.W.3d 276, 279 (Tex. App.—Austin
2007, no pet.).  However, section 74.351 does not prohibit experts, as opposed
to courts, from making inferences based on medical history.  Marvin v.
Fithian, No. 14-07-00996-CV, 2008 WL 2579824, at *4 (Tex. App.—Houston
[14th Dist.] July 1, 2008, no pet.) (mem. op.); see also Tex. R. Evid.
703 (providing that an expert may draw inferences from the facts or data in a
particular case); Tex. R. Evid. 705 (providing that an expert may testify in
terms of opinions and inferences).

V. 
Discussion

Appellants
contend in five issues that Tomas failed to provide an expert report as defined
by civil practice and remedies code section 74.351 because her expert witness
is not qualified to address the applicable standard of care or causation and
because the expert’s report does not adequately set forth the applicable
standard of care, breach of the standard of care, or causation.

A. 
Qualifications

Appellants
argue in their first two issues that the expert report and attached CV do not
establish Dr. Heard’s qualifications to address the applicable standard of care
or causation.  Specifically, Appellants contend that the report contains only
conclusory assertions about Dr. Heard’s qualifications and never mentions Dr.
Heard’s qualifications to opine concerning the surgical procedure at issue in
this case.

1. 
Applicable Law

Not
every licensed doctor is automatically qualified to testify as an expert on
every medical question.  See Broders v. Heise, 924 S.W.2d 148, 152 (Tex.
1996); Hagedorn v. Tisdale, 73 S.W.3d 341, 350 (Tex. App.—Amarillo 2002,
no pet.).  For the author of an expert report to satisfy section 74.351, he
must be qualified to render opinions regarding the medical care which is the
subject of the claim against the defendant.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(r)(5).  The issue is the specific subject matter
and the expert’s familiarity with it.  Hagedorn, 73 S.W.3d at 350; see
Broders, 924 S.W.2d at 153; Blan v. Ali, 7 S.W.3d 741, 745 (Tex. App.—Houston
[14th Dist.] 1999, no pet.).

Analysis
of expert qualifications under section 74.351 is limited to the four corners of
the report and the expert’s CV.  Baylor Coll. of Med. v. Pokluda, 283
S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.); see Palacios,
46 S.W.3d at 878.  To be qualified, the expert must satisfy the requirements of
section 74.401.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(r)(5)(A).  Under section 74.401, the expert must be a physician who:

(1)  is practicing
medicine at the time such testimony is given or was practicing medicine at the
time the claim arose;

 

(2)  has knowledge of
accepted standards of medical care for the diagnosis, care, or treatment of the
illness, injury, or condition involved in the claim; and

 

(3)  is qualified on
the basis of training or experience to offer an expert opinion regarding those
accepted standards of medical care.

Id. §
74.401(a) (West 2011).  “Practicing medicine” includes, but is not limited to,
training residents or students at an accredited school of medicine or
osteopathy or serving as a consulting physician to other physicians who provide
direct patient care, upon the request of such other physicians.  Id. §
74.401(b).  In determining whether a witness is qualified on the basis of
training or experience, the court shall consider whether, at the time the claim
arose or at the time the testimony is given, the witness:

(1)  is board
certified or has other substantial training or experience in an area of medical
practice relevant to the claim; and

 

(2)  is actively
practicing medicine in rendering medical care services relevant to the claim.

Id. §
74.401(c).

A
person may qualify as an expert witness on the issue of the causal relationship
between the alleged breach and the injury claimed “only if the person is a
physician and is otherwise qualified to render opinions on that causal
relationship under the Texas Rules of Evidence.”  Id. § 74.403(a).  Texas
Rule of Evidence 702 requires an expert witness to be qualified on the basis of
“knowledge, skill, experience, training, or education.”  Tex. R. Evid. 702.

2. 
Applicable Facts

At
issue in this case are Dr. Cortez’s decision to proceed with surgery to remove
Tomas’s ovary and the care Dr. Cortez provided Tomas during and after that
surgery.  Relevant to his qualifications concerning the applicable standard of
care and causation, Dr. Heard’s report states as follows:

I am currently a
physician practicing obstetrics, gynecology, and reproductive endocrinology in
the state of Texas.  I have been board certified and recertified by the
American [B]oard of Obstetrics and Gynecology (ABOG) and have been in practice
postresidency since 1995.  I completed a fellowship and board certification in
reproductive endocrinology and infertility.  I am currently voluntary faculty
as clinical assistant professor for Baylor College of Medicine Department of
Obstetrics and Gynecology and assist in resident training with the Methodist
Residency Program, UT Health Science Center, and UT Medical Branch Residencies
programs as well.  Besides my involvement with residency education, I am also
involved with the American Congress of Obstetrics and Gynecology (ACOG) on a
national level, as well as Medical Director of a national board review courses
[sic] for obstetrics and gynecology which helps to prepare practicing OB/GYN
candidates for written and oral board examination that leads to board
certification.  My current resume, which is attached to this report, contains a
complete listing of my previous teaching appointments as well as past
publications.

 

Based
on my education, training, and past experience, I am qualified to render an
opinion on the medical care of Elizabeth Ebben-Tomas, including the diagnosis
and surgical treatment of her ovarian cyst . . . .

In
addition, Dr. Heard’s CV reflects that he completed his residency in obstetrics
and gynecology in 1995, served as an assistant professor of obstetrics and
gynecology from 1995 to 1999, and was a “Clinical/Research Fellow” in
obstetrics and gynecology from 1999 to 2002.  The CV also lists twenty
different abstracts or publications that Dr. Heard authored or co-authored and
almost as many committees and projects, all involving obstetrics and
gynecology.  But none of the abstracts, publications, committees, or projects
obviously involves or relates to surgical procedures, and neither Dr. Heard’s
report nor his CV expressly list or describe any surgical training or
experience.

3. 
Standard of Care

In In
re Windisch, our sister court held that an expert report offered only
conclusory assertions of an expert’s qualification to opine on the applicable
standard of care involved with an embolization procedure in preparation for
surgery, even though the expert and the defendant physician were both
radiologists.[5]  See 138 S.W.3d
507, 509, 513 (Tex. App.—Amarillo 2004, orig. proceeding).  Specifically, the
court stated,

Except
for some conclusory statements, Shenk’s report contains only brief statements
referencing his qualifications.  Both Shenk and [Defendant] Windisch are
radiologists.  Nothing in Ray’s pleadings or in Shenk’s report or curriculum
vitae allows us to presume, though, that the issues involved in this case are
so common to radiology that any credentialed radiologist can testify to the
applicable standard of care.  His fellowship in neuroradiology and his teaching
appointments earlier in his career might indicate familiarity with the
interventional procedure Windisch performed on Powell, but cannot reasonably be
said to demonstrate that he has knowledge of the accepted standard of care for
the procedure.  . . . [N]othing in the report connects Shenk’s positions since
1988 as medical director of MRI facilities to expertise in the procedure
performed by Windisch.  Absent from the report and curriculum vitae is any
explanation of the manner in which Shenk’s credentials carry with them
familiarity with the “very matter” on which he proposes to opine.  . . .  From
the four corners of the report and curriculum vitae, we find no basis for a
conclusion that Shenk’s training or experience qualify him to offer an expert
opinion on the standard of care for the performance of embolization of brain
tumors, and we must conclude that the report and curriculum vitae cannot
reasonably be read to demonstrate that Shenk is so qualified.

Id. at
513–14 (citations omitted).  Similarly, the court in CHCA Mainland, L.P. v.
Dickie held that the expert’s report and CV did not establish the expert’s
qualifications because the expert did not describe any of his experience
treating or teaching others about decubitus ulcers, even though “it might be
reasonable to infer from the [report and CV] that [the expert] might have
acquired experience in the treatment and care of decubitus ulcers in his
seventeen years of practice and teaching.”  No. 14-07-00831-CV, 2008 WL
3931870, at *5 (Tex. App.—Houston [14th Dist.] Aug. 21, 2008, no pet.) (mem.
op.); see also Carreras v. Trevino, 298 S.W.3d 721, 725–26 (Tex.
App.—Corpus Christi 2009, no pet.) (holding report did not establish expert’s
qualifications because it, other than “summarily asserting” the requisite
knowledge, did not demonstrate the expert’s training or experience with the
surgical and post-operative care of total knee replacement).

In
this case, both Dr. Heard and Dr. Cortez practice obstetrics and gynecology,
and Dr. Heard is board certified in that specialty.  Tomas argues that it is
sufficient that Dr. Heard and Dr. Cortez have the same medical specialty
because experts are routinely qualified to testify, even when they are not of
the same specialty, and because this case involves a simple gynecological
procedure.  But Dr. Heard’s report does not state that the surgery here was a
simple gynecological procedure.  To the contrary, Dr. Heard’s report describes
the procedure as it relates to Tomas, given her surgical history, as complex
and beyond the experience and training of most physicians practicing obstetrics
and gynecology.  Furthermore, simply having the same medical specialty is not
sufficient, standing alone, to qualify Dr. Heard to offer opinions about Dr.
Cortez’s surgical and post-operative care and treatment of Tomas.  See Windisch,
138 S.W.3d at 513 (discussing former section 13.01 and stating that “[t]he requirement
that a Section 13.01 report and curriculum vitae set forth the expert’s
knowledge of the procedure being questioned obtains even when the defendant
physician and the expert share certification in the same specialty”). 
Moreover, it appears from Dr. Heard’s CV that he has limited his practice since
2003 to reproductive matters within the field of obstetrics and gynecology.

Tomas
asserts that the procedure in this case is in Dr. Heard’s “professional
wheelhouse” and is clearly within his specialty.  Dr. Heard quite possibly has
sufficient qualifications to offer opinions concerning the care Dr. Cortez
provided during and after Tomas’s surgery, but nothing within the report’s four
corners discloses or describes Dr. Heard’s training or experience performing,
observing, or teaching other physicians about the surgical removal of an ovary
and the patient’s postoperative care.  See id. at 513–14.  Therefore,
the report does not meet the statutory requirements concerning the care Dr.
Cortez provided during and after Tomas’s surgery.  See Tex. Civ. Prac.
& Rem. Code Ann. § 74.401 (containing standards for qualification to offer
expert opinions).  Thus, we sustain this portion of Appellants’ first issue.

There
is more, however, to Dr. Heard’s opinion than Dr. Cortez’s alleged negligent
care during and after Tomas’s surgery.  Dr. Heard also questions Dr. Cortez’s
decision to proceed with the ovarian surgery given Tomas’s complicated medical
history, and Dr. Heard’s report and CV establish, within their four corners,
that he is qualified to offer opinions concerning the applicable standard of
care on that distinct issue because it involves the general lack of surgical
qualifications possessed by most physicians practicing obstetrics and
gynecology and whether a reasonably prudent physician would consult with
another physician with more qualifications when deciding whether to proceed
with surgery.  Read as a whole, Dr. Heard’s report and CV establish his
qualifications to offer opinions on the standard of care relevant to Dr.
Cortez’s decision to proceed to surgery, but they do not establish his
qualifications to offer opinions on the standard of care relevant to Dr.
Cortez’s care and treatment of Tomas during and after the surgery.  Because the
report and CV establish Dr. Heard’s qualifications to opine concerning the
standard of care applicable to Dr. Cortez’s decision to proceed to surgery, we
overrule the remainder of Appellants’ first issue.

4. 
Causation

Appellants
argue in their second issue that Dr. Heard’s report and CV do not establish his
qualifications to opine concerning causation, and we agree.  Because Tomas’s
injuries and prolonged medical care are alleged to have been caused by
complications relating to her ovarian surgery, Tomas was required to establish
that Dr. Heard is qualified on the basis of “knowledge, skill, experience,
training, or education” to offer opinions concerning the causal link between
Dr. Cortez’s alleged negligence and Tomas’s injuries.  See Tex. R. Evid.
702; see also Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a).  Similar
to the deficiencies in Dr. Heard’s report and CV concerning the standard of
care relating to Dr. Cortez’s care during and after Tomas’s ovarian surgery,
Dr. Heard’s report and CV do not establish his qualifications to offer opinions
concerning causation.  As mentioned above, nothing within the four corners of
Dr. Heard’s report or CV discloses or describes his training or experience
performing, observing, or teaching other physicians about the surgical removal
of an ovary and the patient’s postoperative care, and nothing within the report
or CV suggests that Dr. Heard is qualified to opine concerning the causative
chain that allegedly followed the injury to Tomas’s bowel that allegedly
occurred during that surgery.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.403 (referring to qualifications to offer expert opinions on causation);
Tex. R. Evid. 702; see also Collini v. Pustejovsky, 280 S.W.3d 456, 466
(Tex. App.—Fort Worth 2009, no pet.) (stating that “while [the expert] may be
well qualified to make these assertions [concerning causation], the four
corners of his report simply do not provide any details regarding such
qualifications”).  We therefore sustain Appellant’s second issue.  

B. 
Standard of Care and Breach of Standard of Care

Appellants
contend in their third and fourth issues that the expert report does not
adequately describe the applicable standard of care or how Dr. Cortez allegedly
breached that standard of care.

Dr.
Heard’s report without question contains many conclusory assertions concerning
the standard of care and breach of the standard of care, but the report also
includes several nonconclusory assertions.  For example, the report provides
that Tomas’s complicated medical and surgical history required a physician with
the appropriate training and experience to perform the ovarian surgery and that
Dr. Cortez did not have the requisite training and experience and did not
consult with a more qualified surgeon or other physician before or during the
ovarian surgery.  The report also states that Dr. Cortez breached the standard
of care by deciding to proceed with the surgery and by failing to consult with
Tomas’s prior medical and surgical providers.

Considering
all of the information within the four corners of the report, we hold that
although Dr. Heard’s report could have provided more detailed descriptions of
the applicable standards of care and Dr. Cortez’s alleged breaches of those
standards, the report does provide a fair summary of Dr. Heard’s opinions.  As
to the standard of care and alleged breaches of the standard of care, the
report is sufficient to inform Dr. Cortez of the conduct Tomas has called into
question and to provide the trial court with a basis to conclude that the
claims have merit.  See generally Bowie Mem’l, 79 S.W.3d
at 52; Palacios, 46 S.W.3d at 879; cf. Dickie, 2008 WL 3931870,
at *8 (holding expert report conclusory as to breach of standard of care
because it did not include “specific factual allegations setting forth the
conduct that Dickie has called into question” and did not “discuss at all what
actions were actually taken . . . in Dickie’s treatment, much less what
actions [the defendant] failed to take”).  We therefore overrule Appellants’
third and fourth issues.

C. 
Causation

Appellants
argue in their fifth issue that Dr. Heard’s report does not contain sufficient descriptive
information to establish the requisite causal connection between Dr. Cortez’s
alleged negligence and Tomas’s alleged injuries.  Although we held above that
Dr. Heard’s report and CV do not establish his qualifications to opine
concerning causation, we address Appellants’ fifth issue in the interest of
judicial economy.  See generally In re Estate of Webb, 266 S.W.3d 544,
553 (Tex. App.—Fort Worth 2008, pet. denied) (addressing in interest of
judicial economy an issue likely to be raised on remand).

Relevant
to causation, Dr. Heard’s report states as follows:

It
is my opinion that the botched procedure performed by Dr. Cortez . . . ,
including the departure from the standards of care as highlighted above, caused
serious bodily injury and damage to Ms. Ebben-Tomas.  Based upon the
information and documentation available, as well as my education, training, and
experience, it is my opinion within a reasonable degree of medical probability
that the actions by Dr. Cortez . . . led to the patient’s life threatening
complications initiated during the first procedure and the immediate
postoperative period that required additional surgery, intensive care
treatment, and prolonged hospitalization and medical care.  These complications
would have been avoided if the appropriate preoperative consultation and
planning and intraoperative surgical management would have been done.

Appellants
argue that Dr. Heard’s report is inadequate to establish causation because Dr.
Heard does not explain or describe how different preoperative planning or
consultation or different intraoperative surgical management would have
prevented Tomas’s bowel injury.  Tomas responds that the report provides a fair
summary of causation because it provides that her life threatening condition “would
have been avoided if the appropriate preoperative consultation and planning and
intraoperative surgical management would have been done.”

In Castillo
v. August, Castillo underwent spinal surgery, was subsequently transferred
to a rehabilitation facility under the care of Dr. August, and developed a
staph infection in the surgical site and meningitis.  See 248 S.W.3d
874, 882–83 (Tex. App.—El Paso 2008, no pet.).  Castillo sued Dr. August and
other defendants alleging that Dr. August had a duty to observe and monitor her
incision for any sign of infection and that his failure to do so resulted in
the staph infection and life-threatening meningitis.  Id. at 878.  The
expert report opined that Dr. August should have personally and vigilantly
monitored Castillo’s status because she had presented upon admission to the
rehabilitation facility with signs and symptoms of infection and that he should
have identified, examined, diagnosed, and taken measures to treat the
infection.  Id. at 882.  As to causation, however, the expert report by
Dr. Pacheco stated only that “Dr. August’s breach of the standard of care ‘caused
Ms. Castillo to suffer the meningitis and caused the need to remove the
hardware that [the surgeon] had implanted in Ms. Castillo’s spine—given the
advanced and uncontrolled state of the infection in her back.’”  Id.  

Holding
that the expert report was deficient concerning causation, the Castillo
court held,

Dr.
Pacheco does not adequately link Dr. August’s actions to Ms. Castillo’s
subsequent “raging infection” and staph meningitis.  His narrative of events
does not discuss delusional behavior, meningitis, or a subsequent surgery to
debride the wound and remove the hardware.  Nor does he explain how the
infection in her back caused the meningitis.  While a claimant is not required
to conclusively prove her case through a preliminary expert report, the report
may not merely state conclusions about any of the elements.  Dr. Pacheco’s
expert report requires us to infer causation, which, under the “four corners”
rule, we are not permitted to do.

Id. at
882–83 (citations omitted).  Similarly, this court held in Collini that
the discussion of causation in the expert’s report was conclusory because it
did not “provide any medical detail as to how the Reglan caused [the
claimant’s] conditions or, more importantly, how Dr. Collini’s specific
prescriptions of Reglan (beyond the taking of Reglan generally) attributed to
the harm.”  280 S.W.3d at 467.

          In
this case, Dr. Heard’s report does not contain any discussion as to why Tomas
developed the life threatening complications; why she required additional
surgery, intensive care treatment, and prolonged hospitalization; how Tomas’s
medical condition progressed; or how Dr. Cortez’s action or inaction brought
about each stage in Tomas’s worsening medical condition.  Thus, the trial court
was required to infer causation, meaning Dr. Heard’s report does not
sufficiently address the link between Dr. Cortez’s alleged breaches of the
standard of care and Tomas’s injuries.  See id. at 467–68; Castillo,
248 S.W.3d at 882–83.  We therefore sustain Appellants’ fifth issue. 

VI. 
Disposition After Partial Reversal

          Appellants
contend that we should render judgment dismissing Tomas’s claims with prejudice,
and Tomas counters that we should remand the case so that the trial court may
consider granting thirty additional days to cure the deficiencies.  As we
stated in Collini, “The Texas Supreme Court has held that section ‘74.351’s
plain language permits one thirty-day extension when the court of appeals finds
deficient a report that the trial court considered adequate.’”  280 S.W.3d at
468 (quoting Leland v. Brandal, 257 S.W.3d 204, 207 (Tex. 2008)).  Accordingly,
we will remand this case to permit the trial court the opportunity to consider granting
Tomas an extension to cure the deficiencies in Dr. Heard’s report.

VII. 
Conclusion

          Having
sustained part of Appellants’ first issue all of their second and fifth issues and
having overruled the remainder of Appellants’ first issue and all of their third
and fourth issues, we affirm in part and reverse in part the trial court’s
order and remand this case to the trial court to determine whether Tomas should
be granted an extension to cure the deficiencies discussed in this opinion.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
MCCOY, and GABRIEL, JJ.

 

DELIVERED:  February 9, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(a)(9) (West Supp. 2011).





[3]See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351 (West Supp. 2011).





[4]Tomas also alleged that
this representation by Dr. Cortez was not accurate.





[5]An embolization procedure
“involves [the] placement of small particles and wires into the blood vessels
for the purpose of cutting off the blood supply to a tumor.”  Id. at 509
n.2.