

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00231-CV

OLGA CORTEZ, M.D., MEDICAL             APPELLANTS
CLINIC OF NORTH TEXAS, P.A.,
AND DENTON OBSTETRICS &
GYNECOLOGY, P.A.

V.

ELIZABETH EBBEN TOMAS             APPELLEE

----------

### FROM THE 431ST DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In this interlocutory appeal,[2] Appellants Olga Cortez, M.D., Medical Clinics

of North Texas, P.A., and Denton Obstetrics and Gynecology, P.A. contend that

----

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2011).

the trial court abused its discretion by denying their motion to dismiss the healthcare liability claim filed against them by Appellee Elizabeth Ebben Tomas. Appellants contend in five issues that Tomas failed to provide an expert report as defined by civil practice and remedies code section 74.351[3] because the expert is not qualified to address the applicable standard of care or causation and because the expert's report does not adequately set forth the applicable standard of care, breach of the standard of care, or causation. We affirm in part and reverse and remand in part.

## II. Background

Tomas filed suit against Appellants in August 2010 alleging medical negligence during and after a surgery to remove Tomas's ovary. Tomas pleaded that she had her gallbladder surgically removed in July 2008 and that the surgeon noted a cyst on her ovary during the surgery. Tomas's primary care physician referred her to Dr. Cortez for examination of the ovarian cyst, and Dr. Cortez recommended surgical removal of Tomas's ovary.

Tomas alleged that she expressed concern to Dr. Cortez about undergoing another surgery so soon but that Dr. Cortez represented that she had spoken with Tomas's prior surgeon who indicated that a second surgery would not be a problem.[4] Tomas thereafter agreed to undergo the second surgery, which Dr.

---

[3]See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2011).

[4]Tomas also alleged that this representation by Dr. Cortez was not accurate.

Cortez performed. Tomas alleged that Dr. Cortez "sliced [Tomas]'s small bowel during the surgery and either never noticed it or attempted to cover up the problem." Tomas further alleged that she "developed a severe wound, became septic[,] had to undergo a subsequent bowel operation" eight days later, "was hospitalized for many months," and "is still undergoing medical treatment." Tomas alleged that Medical Clinics of North Texas, P.A. and Denton Obstetrics and Gynecology, P.A. are vicariously liable for Dr. Cortez's alleged negligence.

Tomas filed and served the curriculum vitae (CV) and expert report of Dr. Michael Heard. Appellants objected to Dr. Heard's CV and report and filed a motion to dismiss Tomas's claims. The trial court conducted a hearing and denied Appellants' motion to dismiss. Appellants then filed notice of this interlocutory appeal.

### III. Standard of Review

A trial court's ruling concerning an expert report under section 74.351 (formerly article 4590i, section 13.01) of the Medical Liability and Insurance Act is reviewable under the abuse of discretion standard. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An

3

appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *Bowie Mem'l*, 79 S.W.3d at 52; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

## IV. Statutory Requirements

A health care liability claimant must serve an expert report on each defendant no later than the 120th day after the claim is filed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). A defendant may challenge the adequacy of a report by filing a motion to dismiss, and the trial court must grant the motion to dismiss if it finds after a hearing that "the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute. *Id*. § 74.351(l). While the expert report "need not marshal all of the plaintiff's proof," it must provide a fair summary of the expert's opinions as to the "applicable standard of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id*. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878 (construing former article 4590i, § 13.01).

To constitute a good faith effort, the report must discuss the standards of care, breach, and causation with sufficient specificity (1) to inform the defendant of the conduct the plaintiff has called into question and (2) to provide the trial court with a basis to conclude that the claims have merit. *See Bowie Mem'l*, 79

4

S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Bowie Mem'l*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. But the information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Palacios*, 46 S.W.3d at 879.

When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document. *Bowie Mem'l*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878. This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *See Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.). However, section 74.351 does not prohibit experts, as opposed to courts, from making inferences based on medical history. *Marvin v. Fithian*, No. 14-07-00996-CV, 2008 WL 2579824, at *4 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) (mem. op.); *see also* Tex. R. Evid. 703 (providing that an expert may draw inferences from the facts or data in a particular case); Tex. R. Evid. 705 (providing that an expert may testify in terms of opinions and inferences).

## V. Discussion

Appellants contend in five issues that Tomas failed to provide an expert report as defined by civil practice and remedies code section 74.351 because her expert witness is not qualified to address the applicable standard of care or

causation and because the expert's report does not adequately set forth the applicable standard of care, breach of the standard of care, or causation.

## A. Qualifications

Appellants argue in their first two issues that the expert report and attached CV do not establish Dr. Heard's qualifications to address the applicable standard of care or causation. Specifically, Appellants contend that the report contains only conclusory assertions about Dr. Heard's qualifications and never mentions Dr. Heard's qualifications to opine concerning the surgical procedure at issue in this case.

### 1. Applicable Law

Not every licensed doctor is automatically qualified to testify as an expert on every medical question. *See Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996); *Hagedorn v. Tisdale*, 73 S.W.3d 341, 350 (Tex. App.—Amarillo 2002, no pet.). For the author of an expert report to satisfy section 74.351, he must be qualified to render opinions regarding the medical care which is the subject of the claim against the defendant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5). The issue is the specific subject matter and the expert's familiarity with it. *Hagedorn*, 73 S.W.3d at 350; *see Broders*, 924 S.W.2d at 153; *Blan v. Ali*, 7 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Analysis of expert qualifications under section 74.351 is limited to the four corners of the report and the expert's CV. *Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see Palacios*,

6

46 S.W.3d at 878. To be qualified, the expert must satisfy the requirements of section 74.401. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(A). Under section 74.401, the expert must be a physician who:

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*Id.* § 74.401(a) (West 2011). "Practicing medicine" includes, but is not limited to, training residents or students at an accredited school of medicine or osteopathy or serving as a consulting physician to other physicians who provide direct patient care, upon the request of such other physicians. *Id.* § 74.401(b). In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

> (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and
>
> (2) is actively practicing medicine in rendering medical care services relevant to the claim.

*Id.* § 74.401(c).

A person may qualify as an expert witness on the issue of the causal relationship between the alleged breach and the injury claimed "only if the person is a physician and is otherwise qualified to render opinions on that causal

7

relationship under the Texas Rules of Evidence." *Id.* § 74.403(a). Texas Rule of Evidence 702 requires an expert witness to be qualified on the basis of "knowledge, skill, experience, training, or education." Tex. R. Evid. 702.

## 2. Applicable Facts

At issue in this case are Dr. Cortez's decision to proceed with surgery to remove Tomas's ovary and the care Dr. Cortez provided Tomas during and after that surgery. Relevant to his qualifications concerning the applicable standard of care and causation, Dr. Heard's report states as follows:

> I am currently a physician practicing obstetrics, gynecology, and reproductive endocrinology in the state of Texas. I have been board certified and recertified by the American [B]oard of Obstetrics and Gynecology (ABOG) and have been in practice postresidency since 1995. I completed a fellowship and board certification in reproductive endocrinology and infertility. I am currently voluntary faculty as clinical assistant professor for Baylor College of Medicine Department of Obstetrics and Gynecology and assist in resident training with the Methodist Residency Program, UT Health Science Center, and UT Medical Branch Residencies programs as well. Besides my involvement with residency education, I am also involved with the American Congress of Obstetrics and Gynecology (ACOG) on a national level, as well as Medical Director of a national board review courses [sic] for obstetrics and gynecology which helps to prepare practicing OB/GYN candidates for written and oral board examination that leads to board certification. My current resume, which is attached to this report, contains a complete listing of my previous teaching appointments as well as past publications.
>
> Based on my education, training, and past experience, I am qualified to render an opinion on the medical care of Elizabeth Ebben-Tomas, including the diagnosis and surgical treatment of her ovarian cyst . . . .

In addition, Dr. Heard's CV reflects that he completed his residency in obstetrics and gynecology in 1995, served as an assistant professor of obstetrics

8

and gynecology from 1995 to 1999, and was a "Clinical/Research Fellow" in obstetrics and gynecology from 1999 to 2002. The CV also lists twenty different abstracts or publications that Dr. Heard authored or co-authored and almost as many committees and projects, all involving obstetrics and gynecology. But none of the abstracts, publications, committees, or projects obviously involves or relates to surgical procedures, and neither Dr. Heard's report nor his CV expressly list or describe any surgical training or experience.

### 3. Standard of Care

In *In re Windisch*, our sister court held that an expert report offered only conclusory assertions of an expert's qualification to opine on the applicable standard of care involved with an embolization procedure in preparation for surgery, even though the expert and the defendant physician were both radiologists.[5] *See* 138 S.W.3d 507, 509, 513 (Tex. App.—Amarillo 2004, orig. proceeding). Specifically, the court stated,

> Except for some conclusory statements, Shenk's report contains only brief statements referencing his qualifications. Both Shenk and [Defendant] Windisch are radiologists. Nothing in Ray's pleadings or in Shenk's report or curriculum vitae allows us to presume, though, that the issues involved in this case are so common to radiology that any credentialed radiologist can testify to the applicable standard of care. His fellowship in neuroradiology and his teaching appointments earlier in his career might indicate familiarity with the interventional procedure Windisch performed on Powell, but cannot reasonably be said to demonstrate that he has

---

[5]An embolization procedure "involves [the] placement of small particles and wires into the blood vessels for the purpose of cutting off the blood supply to a tumor." *Id.* at 509 n.2.

9

> knowledge of the accepted standard of care for the procedure. . . . [N]othing in the report connects Shenk's positions since 1988 as medical director of MRI facilities to expertise in the procedure performed by Windisch. Absent from the report and curriculum vitae is any explanation of the manner in which Shenk's credentials carry with them familiarity with the "very matter" on which he proposes to opine. . . . From the four corners of the report and curriculum vitae, we find no basis for a conclusion that Shenk's training or experience qualify him to offer an expert opinion on the standard of care for the performance of embolization of brain tumors, and we must conclude that the report and curriculum vitae cannot reasonably be read to demonstrate that Shenk is so qualified.

*Id.* at 513–14 (citations omitted). Similarly, the court in *CHCA Mainland, L.P. v. Dickie* held that the expert's report and CV did not establish the expert's qualifications because the expert did not describe any of his experience treating or teaching others about decubitus ulcers, even though "it might be reasonable to infer from the [report and CV] that [the expert] might have acquired experience in the treatment and care of decubitus ulcers in his seventeen years of practice and teaching." No. 14-07-00831-CV, 2008 WL 3931870, at *5 (Tex. App.—Houston [14th Dist.] Aug. 21, 2008, no pet.) (mem. op.); *see also Carreras v. Trevino*, 298 S.W.3d 721, 725–26 (Tex. App.—Corpus Christi 2009, no pet.) (holding report did not establish expert's qualifications because it, other than "summarily asserting" the requisite knowledge, did not demonstrate the expert's training or experience with the surgical and post-operative care of total knee replacement).

In this case, both Dr. Heard and Dr. Cortez practice obstetrics and gynecology, and Dr. Heard is board certified in that specialty. Tomas argues that it is sufficient that Dr. Heard and Dr. Cortez have the same medical specialty

because experts are routinely qualified to testify, even when they are not of the same specialty, and because this case involves a simple gynecological procedure. But Dr. Heard's report does not state that the surgery here was a simple gynecological procedure. To the contrary, Dr. Heard's report describes the procedure as it relates to Tomas, given her surgical history, as complex and beyond the experience and training of most physicians practicing obstetrics and gynecology. Furthermore, simply having the same medical specialty is not sufficient, standing alone, to qualify Dr. Heard to offer opinions about Dr. Cortez's surgical and post-operative care and treatment of Tomas. *See Windisch*, 138 S.W.3d at 513 (discussing former section 13.01 and stating that "[t]he requirement that a Section 13.01 report and curriculum vitae set forth the expert's knowledge of the procedure being questioned obtains even when the defendant physician and the expert share certification in the same specialty"). Moreover, it appears from Dr. Heard's CV that he has limited his practice since 2003 to reproductive matters within the field of obstetrics and gynecology.

Tomas asserts that the procedure in this case is in Dr. Heard's "professional wheelhouse" and is clearly within his specialty. Dr. Heard quite possibly has sufficient qualifications to offer opinions concerning the care Dr. Cortez provided during and after Tomas's surgery, but nothing within the report's four corners discloses or describes Dr. Heard's training or experience performing, observing, or teaching other physicians about the surgical removal of an ovary and the patient's postoperative care. *See id.* at 513–14. Therefore, the

11

report does not meet the statutory requirements concerning the care Dr. Cortez provided during and after Tomas's surgery. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.401 (containing standards for qualification to offer expert opinions). Thus, we sustain this portion of Appellants' first issue.

There is more, however, to Dr. Heard's opinion than Dr. Cortez's alleged negligent care during and after Tomas's surgery. Dr. Heard also questions Dr. Cortez's decision to proceed with the ovarian surgery given Tomas's complicated medical history, and Dr. Heard's report and CV establish, within their four corners, that he is qualified to offer opinions concerning the applicable standard of care on that distinct issue because it involves the general lack of surgical qualifications possessed by most physicians practicing obstetrics and gynecology and whether a reasonably prudent physician would consult with another physician with more qualifications when deciding whether to proceed with surgery. Read as a whole, Dr. Heard's report and CV establish his qualifications to offer opinions on the standard of care relevant to Dr. Cortez's decision to proceed to surgery, but they do not establish his qualifications to offer opinions on the standard of care relevant to Dr. Cortez's care and treatment of Tomas during and after the surgery. Because the report and CV establish Dr. Heard's qualifications to opine concerning the standard of care applicable to Dr. Cortez's decision to proceed to surgery, we overrule the remainder of Appellants' first issue.

12

## 4. Causation

Appellants argue in their second issue that Dr. Heard's report and CV do not establish his qualifications to opine concerning causation, and we agree. Because Tomas's injuries and prolonged medical care are alleged to have been caused by complications relating to her ovarian surgery, Tomas was required to establish that Dr. Heard is qualified on the basis of "knowledge, skill, experience, training, or education" to offer opinions concerning the causal link between Dr. Cortez's alleged negligence and Tomas's injuries. *See* Tex. R. Evid. 702; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.403(a). Similar to the deficiencies in Dr. Heard's report and CV concerning the standard of care relating to Dr. Cortez's care during and after Tomas's ovarian surgery, Dr. Heard's report and CV do not establish his qualifications to offer opinions concerning causation. As mentioned above, nothing within the four corners of Dr. Heard's report or CV discloses or describes his training or experience performing, observing, or teaching other physicians about the surgical removal of an ovary and the patient's postoperative care, and nothing within the report or CV suggests that Dr. Heard is qualified to opine concerning the causative chain that allegedly followed the injury to Tomas's bowel that allegedly occurred during that surgery. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.403 (referring to qualifications to offer expert opinions on causation); Tex. R. Evid. 702; *see also Collini v. Pustejovsky*, 280 S.W.3d 456, 466 (Tex. App.—Fort Worth 2009, no pet.) (stating that "while [the expert] may be well qualified to make these assertions

13

[concerning causation], the four corners of his report simply do not provide any details regarding such qualifications"). We therefore sustain Appellant's second issue.

## B. Standard of Care and Breach of Standard of Care

Appellants contend in their third and fourth issues that the expert report does not adequately describe the applicable standard of care or how Dr. Cortez allegedly breached that standard of care.

Dr. Heard's report without question contains many conclusory assertions concerning the standard of care and breach of the standard of care, but the report also includes several nonconclusory assertions. For example, the report provides that Tomas's complicated medical and surgical history required a physician with the appropriate training and experience to perform the ovarian surgery and that Dr. Cortez did not have the requisite training and experience and did not consult with a more qualified surgeon or other physician before or during the ovarian surgery. The report also states that Dr. Cortez breached the standard of care by deciding to proceed with the surgery and by failing to consult with Tomas's prior medical and surgical providers.

Considering all of the information within the four corners of the report, we hold that although Dr. Heard's report could have provided more detailed descriptions of the applicable standards of care and Dr. Cortez's alleged breaches of those standards, the report does provide a fair summary of Dr. Heard's opinions. As to the standard of care and alleged breaches of the

standard of care, the report is sufficient to inform Dr. Cortez of the conduct Tomas has called into question and to provide the trial court with a basis to conclude that the claims have merit.  *See generally Bowie Mem'l*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879; *cf. Dickie*, 2008 WL 3931870, at *8 (holding expert report conclusory as to breach of standard of care because it did not include "specific factual allegations setting forth the conduct that Dickie has called into question" and did not "discuss at all what actions were actually taken . . . in Dickie's treatment, much less what actions [the defendant] failed to take"). We therefore overrule Appellants' third and fourth issues.

## C. Causation

Appellants argue in their fifth issue that Dr. Heard's report does not contain sufficient descriptive information to establish the requisite causal connection between Dr. Cortez's alleged negligence and Tomas's alleged injuries.  Although we held above that Dr. Heard's report and CV do not establish his qualifications to opine concerning causation, we address Appellants' fifth issue in the interest of judicial economy.  *See generally In re Estate of Webb*, 266 S.W.3d 544, 553 (Tex. App.—Fort Worth 2008, pet. denied) (addressing in interest of judicial economy an issue likely to be raised on remand).

Relevant to causation, Dr. Heard's report states as follows:

> It is my opinion that the botched procedure performed by Dr. Cortez . . . , including the departure from the standards of care as highlighted above, caused serious bodily injury and damage to Ms. Ebben-Tomas.  Based upon the information and documentation available, as well as my education, training, and experience, it is my

15

opinion within a reasonable degree of medical probability that the actions by Dr. Cortez . . . led to the patient's life threatening complications initiated during the first procedure and the immediate postoperative period that required additional surgery, intensive care treatment, and prolonged hospitalization and medical care. These complications would have been avoided if the appropriate preoperative consultation and planning and intraoperative surgical management would have been done.

Appellants argue that Dr. Heard's report is inadequate to establish causation because Dr. Heard does not explain or describe how different preoperative planning or consultation or different intraoperative surgical management would have prevented Tomas's bowel injury. Tomas responds that the report provides a fair summary of causation because it provides that her life threatening condition "would have been avoided if the appropriate preoperative consultation and planning and intraoperative surgical management would have been done."

In *Castillo v. August*, Castillo underwent spinal surgery, was subsequently transferred to a rehabilitation facility under the care of Dr. August, and developed a staph infection in the surgical site and meningitis. *See* 248 S.W.3d 874, 882–83 (Tex. App.—El Paso 2008, no pet.). Castillo sued Dr. August and other defendants alleging that Dr. August had a duty to observe and monitor her incision for any sign of infection and that his failure to do so resulted in the staph infection and life-threatening meningitis. *Id.* at 878. The expert report opined that Dr. August should have personally and vigilantly monitored Castillo's status because she had presented upon admission to the rehabilitation facility with

16

signs and symptoms of infection and that he should have identified, examined, diagnosed, and taken measures to treat the infection. *Id.* at 882. As to causation, however, the expert report by Dr. Pacheco stated only that "Dr. August's breach of the standard of care 'caused Ms. Castillo to suffer the meningitis and caused the need to remove the hardware that [the surgeon] had implanted in Ms. Castillo's spine—given the advanced and uncontrolled state of the infection in her back.'" *Id.*

Holding that the expert report was deficient concerning causation, the *Castillo* court held,

> Dr. Pacheco does not adequately link Dr. August's actions to Ms. Castillo's subsequent "raging infection" and staph meningitis. His narrative of events does not discuss delusional behavior, meningitis, or a subsequent surgery to debride the wound and remove the hardware. Nor does he explain how the infection in her back caused the meningitis. While a claimant is not required to conclusively prove her case through a preliminary expert report, the report may not merely state conclusions about any of the elements. Dr. Pacheco's expert report requires us to infer causation, which, under the "four corners" rule, we are not permitted to do.

*Id.* at 882–83 (citations omitted). Similarly, this court held in *Collini* that the discussion of causation in the expert's report was conclusory because it did not "provide any medical detail as to *how* the Reglan caused [the claimant's] conditions or, more importantly, *how* Dr. Collini's specific prescriptions of Reglan (beyond the taking of Reglan generally) attributed to the harm." 280 S.W.3d at 467.

17

In this case, Dr. Heard's report does not contain any discussion as to why Tomas developed the life threatening complications; why she required additional surgery, intensive care treatment, and prolonged hospitalization; how Tomas's medical condition progressed; or how Dr. Cortez's action or inaction brought about each stage in Tomas's worsening medical condition. Thus, the trial court was required to infer causation, meaning Dr. Heard's report does not sufficiently address the link between Dr. Cortez's alleged breaches of the standard of care and Tomas's injuries. *See id.* at 467–68; *Castillo*, 248 S.W.3d at 882–83. We therefore sustain Appellants' fifth issue.

## VI. Disposition After Partial Reversal

Appellants contend that we should render judgment dismissing Tomas's claims with prejudice, and Tomas counters that we should remand the case so that the trial court may consider granting thirty additional days to cure the deficiencies. As we stated in *Collini*, "The Texas Supreme Court has held that section '74.351's plain language permits one thirty-day extension when the court of appeals finds deficient a report that the trial court considered adequate.'" 280 S.W.3d at 468 (quoting *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008)). Accordingly, we will remand this case to permit the trial court the opportunity to consider granting Tomas an extension to cure the deficiencies in Dr. Heard's report.

18

## VII.  Conclusion

Having sustained part of Appellants' first issue all of their second and fifth issues and having overruled the remainder of Appellants' first issue and all of their third and fourth issues, we affirm in part and reverse in part the trial court's order and remand this case to the trial court to determine whether Tomas should be granted an extension to cure the deficiencies discussed in this opinion.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MCCOY, and GABRIEL, JJ.

DELIVERED:  February 9, 2012